1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    TRICIA REYES-AGUILAR, et al.,         Case No.  13-cv-05764-JCS

          Plaintiffs,

8

9        v.                                **ORDER GRANTING DEFENDANTS'**
                                           **MOTIONS TO DISMISS; DISMISSING**
10   BANK OF AMERICA, N.A, et al.,          **FIRST AMENDED COMPLAINT**

          Defendants.                       Re: Dkt. Nos. 16, 18

11

12

13   **I.      INTRODUCTION**

14          Tricia Reyes-Aguilar and Edward Aguilar ("Plaintiffs") brought suit for wrongful

15   foreclosure and related claims against Bank of America, N.A. ("Bank of America"), Citibank,

16   N.A. ("Citibank"), Recontrust Company, N.A. ("Recontrust"), and Mortgage Electronic

17   Registration Systems, Inc. ("MERS") (collectively, "Defendants"). Presently before the Court are

18   two motions to dismiss Plaintiffs' First Amended Complaint ("FAC") submitted by Bank of

19   America and Recontrust ("BOA Motion"), and MERS and Citibank ("MERS Motion")

20   (collectively, "Motions"). All parties have consented to the jurisdiction of a United States

21   Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set out below, the Motions are

22   GRANTED. The Complaint is DISMISSED with leave to amend as described below.

23   **II.     BACKGROUND**

24          On September 22, 2006, Plaintiffs entered into a Deed of Trust ("DOT") in connection

25   with a loan for $461,500 secured by a single-family home located at 2180 Palm Place in Hayward,

26   California ("Property"). *See* FAC ¶ 2; Defs.' Bank of America and Recontrust's Req. for Judicial

27   Notice in Supp. of Defs.' Bank of America and Recontrust's Mot. to Dismiss ("BOA RJN"), Ex.

28   A at 1, 3; Defs.' MERS and Citibank's Req. for Judicial Notice in Supp. of Defs.' MERS and

United States District Court
Northern District of California

Citibank's Mot. to Dismiss ("MERS RJN"), Ex. A at 1, 3.[1] The DOT identified Quality Home Loans as the lender, T.D. Service Company as the trustee, and MERS as the nominee for the lender and the lender's assigns. BOA RJN Ex. A at 1. The DOT was recorded in the Official Records of the Recorder of Alameda County, California on October 3, 2006.[2] *Id.*

Plaintiffs allege that, shortly after recording the DOT, Quality Home Loans securitized and sold its beneficial interest in the DOT to the certificate holders of CWABS, Inc. Asset-Backed Certificates, Series 2006-QH2 ("CWABS Trust"). FAC ¶ 10. Plaintiffs further allege that Citibank was named as trustee for the certificate holders of the CWABS Trust pursuant to a Pooling and Servicing Agreement ("PSA").[3] *Id.* On August 5, 2011, MERS, as nominee of Quality Home Loans, recorded an Assignment of Deed of Trust ("Assignment of DOT" or "Assignment") dated August 1, 2011, which assigned the beneficial interest in the DOT to Citibank as trustee for the certificate holders of the CWABS Trust. FAC ¶ 11; BOA RJN Ex. B. Plaintiffs allege that the Assignment was late and in violation of the PSA. *See, e.g.*, FAC ¶¶ 24, 26.

On April 4, 2012, Recontrust, as "agent for the beneficiary," sent Plaintiffs a document titled "Debt Validation Notice," which stated that Plaintiffs owed $571,080.55 to Bank of America. *See* FAC ¶ 12, Ex. A.

On April 6, 2012, a Substitution of Trustee ("SOT") was recorded, and it substituted Recontrust as the trustee of the DOT in place of the original trustee, T.D. Service Company. FAC ¶ 13; BOA RJN Ex. C. It was executed on April 5, 2012 by a representative of Bank of America acting as attorney in fact for Citibank as trustee for the certificate holders of the CWABS Trust. BOA RJN Ex. C.

Also on April 6, 2012, a Notice of Default and Election to Sell Under Deed of Trust ("NOD") was recorded, and it stated that Plaintiffs owed $89,227.42 as of April 4, 2012. *See* FAC

---

[1] The Court takes judicial notice of the documents requested by Defendants as explained below. *See* Part III, *infra*. Because the BOA RJN and the MERS RJN request judicial notice of identical documents, the Court refers only to the BOA RJN.

[2] All references to recordations herein refer to recordations with the Official Records of the Recorder of Alameda County, California.

[3] The Court has not received a copy of the PSA.

¶ 14, Ex. B; BOA RJN Ex. D. The NOD was executed on April 5, 2012 by Recontrust as an agent of the beneficiary of the DOT. BOA RJN Ex. D at 2. The NOD stated that "[t]o find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason," Plaintiffs should contact Citibank as trustee of the CWABS Trust. *Id.* The recorded NOD included a declaration of compliance with section 2923.5 of the California Civil Code, signed by a representative of Bank of America on March 9, 2012. *Id.* at 4.

On or around July 24, 2012, a Notice of Trustee's Sale ("NOTS") was recorded by Recontrust as agent for the beneficiary of the DOT, stating that a trustee's sale of the Property would take place on November 18, 2013. *See* FAC ¶ 15, Ex. C. On or around October 28, 2013, Plaintiffs apparently received a second notice, which again stated that the trustee's sale would take place on November 18, 2013. *See* FAC ¶ 16, Ex. C. Plaintiffs allege that the trustee's sale has been cancelled and no new sale has been rescheduled. *See id.* ¶ 16.

On November 12, 2013, Plaintiffs filed this action against Defendants in the Alameda County Superior Court, which was subsequently removed to federal court by Defendants on the basis of federal question and supplemental jurisdiction on December 12, 2013. *See* Dkt. No. 1. On January 15, 2014, Plaintiffs amended their complaint by filing the FAC, which is the operative complaint here. *See* Dkt. No. 11.

The FAC alleges: (1) breach of express agreement, (2) breach of implied agreement, (3) slander of title, (4) wrongful foreclosure, (5) violations of section 2923.5 of the California Civil Code, (6) violations of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 *et seq.*, (7) violations of the Rosenthal Act, section 1788 of the California Civil Code, (8) violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, (9) violations of the Unfair Competition Law, section 17200 of the California Business and Professions Code *et seq.*, (10) violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and (11) violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 *et seq.*

Defendants move to dismiss all claims asserted against them. In addition to addressing each argument in turn, they argue generally that Plaintiffs' claims fail for failure to allege tender. Defs.' Bank of America and Recontrust's Mot. to Dismiss at 3–4 ("BOA Mot."); Defs.' MERS

United States District Court
Northern District of California

1   and Citbank's Mot. to Dismiss at 3–4 ("MERS Mot."). Defendants also argue that the fundamental

2   premise of many of Plaintiffs' claims—*i.e.*, that the DOT's chain of title was broken by virtue of

3   the allegedly late Assignment of DOT, and thus no entity had the right to issue the SOT or the

4   NOD—fails entirely. BOA Mot. at 4–7; MERS Mot. at 4–7.

5   **III.    JUDICIAL NOTICE**

6           The standard for judicial notice is set forth in Rule 201 of the Federal Rules of Evidence,

7   which allows a court to take judicial notice of an adjudicative fact not subject to "reasonable

8   dispute," either because it is "generally known within the territorial jurisdiction of the trial court"

9   or it is "capable of accurate and ready determination by resort to sources whose accuracy cannot

10  reasonably be questioned." Fed. R. Evid. 201. As a general rule, the court "may not consider any

11  material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *United States v. Corinthian*

12  *Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668,

13  688 (9th Cir. 2001)). However, the court may consider unattached evidence on which the

14  complaint "necessarily relies" if: "(1) the complaint refers to the document; (2) the document is

15  central to plaintiff's claim; and (3) no party questions the authenticity of the document."

16  *Corinthian Colls.*, 655 F.3d at 999 (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). In

17  addition, the court may take judicial notice of "matters of public record," but not facts that may be

18  "subject to reasonable dispute." *Corinthian Colls.*, 655 F.3d (citing *Lee*, 250 F.3d at 689).

19          Defendants request judicial notice of four publicly recorded documents: the DOT,

20  Assignment of DOT, SOT, and NOD. Plaintiffs do not object to judicial notice of the documents

21  themselves as public records. However, Plaintiffs object to judicial notice of any factual matters

22  contained therein. Pls.' Objection to BOA RJN at 2; Pls.' Objection to MERS RJN at 2.

23          Judicial notice of the existence and content of these documents, but not the truth of any

24  facts stated therein, is proper under Federal Rule of Evidence 201(b) because the authenticity of

25  the documents is capable of accurate and ready determination by resort to sources whose accuracy

26  cannot reasonably be questioned. *See Zapata v. Wells Fargo Bank, N.A.*, C 13-04288 WHA, 2013

27  WL 6491377, at *5 (N.D. Cal. Dec. 10, 2013) (citing *Castillo v. Wachovia Mortg.*, No. 12-0101

28  EMC, 2012 WL 1213296, at *1 n.2 (N.D. Cal. Apr. 11, 2012)).

United States District Court
Northern District of California

1

United States District Court
Northern District of California

## IV.    LEGAL STANDARD

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star. Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). In ruling on a motion to dismiss under Rule 12(b)(6), the Court takes "all allegations of material fact as true and construe(s) them in the lights most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1990). The complaint need not contain "detailed factual allegations," but must allege facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)). However, "[l]eave to amend need not be granted when an amendment would be futile." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097 (9th Cir. 2002).

## V.    ANALYSIS

### A.    Plaintiffs' Broken Chain of Title Theory

The bulk of Plaintiffs' claims are based on an oft-repeated and oft-rejected premise, *i.e.*, the beneficiary that initiated foreclosure of the Property was not the true beneficiary of the DOT because of irregularities in the securitization process that resulted in a broken chain of title. This legal theory, as advanced by Plaintiffs' attorneys, has been rejected numerous times by federal courts in California. *See, e.g.*, *Rivac v. Ndex W. LLC*, C 13-1417 PJH, 2013 WL 6662762 (N.D. Cal. Dec. 17, 2013); *Patel v. Mortgage Elec. Registration Sys., Inc.*, 3:13-CV-1874-KAW, 2013 WL 6512848 (N.D. Cal. Dec. 12, 2013); *Zapata*, 2013 WL 6491377; *Bergman v. Bank of Am.*, C-13-00741 JCS, 2013 WL 5863057 (N.D. Cal. Oct. 23, 2013); *Madlaing v. JPMorgan Chase Bank, N.A.*, CV F 12-2069 LJO SMS, 2013 WL 2403379 (E.D. Cal. May 31, 2013).

Here, Plaintiffs allege that sometime in 2006, the original beneficiary under the DOT,

5

United States District Court
Northern District of California

1   Quality Home Loans, sold its beneficial interest to Citibank as trustee of the CWABS Trust. FAC

2   ¶ 24. While Plaintiffs assert that they are not challenging the act of securitization itself, they do

3   argue that the securitization was flawed because the Assignment of DOT, recorded on August 5,

4   2011, was executed and recorded too late to comply with the CWABS Trust's PSA. FAC ¶ 40;

5   Pls.' Opp'n to BOA Mot. at 4–6, 8 ("Opp'n to BOA"); Pls.' Opp'n to MERS Mot. at 4–6, 8.[4]

6   Plaintiffs conclude that the Assignment was improper and, as a result, Citibank never actually

7   acquired the beneficial interest in the DOT, and the chain of title was "irreversibly broken." *See*

8   FAC ¶¶ 24, 29, 41; Opp'n to BOA at 6–7. According to Plaintiffs' theory, the Assignment is void

9   such that when Citibank, through its agents, recorded the SOT and the NOD on April 6, 2012,

10  Citibank was not the true beneficiary, and its agents did not have the requisite authority.[5] *See* FAC

11  ¶¶ 40–43. Plaintiffs further allege that because they were "never in default to the true beneficiary,

12  the certificate holders of the [CWABS Trust]," they are excused from making their payments

13  under the DOT. *See id.* ¶ 27.

14      Plaintiffs' theory fails again here. Plaintiffs claim that they are challenging irregularities in

15  the securitization process, rather than securitization itself, but their claims rely solely on the "late"

16  Assignment of DOT that allegedly violated the PSA. Regardless of how Plaintiffs cast this theory,

17  they do not have standing to enforce the PSA, nor do they have the standing to challenge the

18  Assignment, or the subsequently-recorded SOT and NOD, on the basis of a violation of the PSA.

19      Although some district courts in the Ninth Circuit have allowed plaintiffs to challenge the

20  securitization process, the majority rule is that plaintiffs lack standing to challenge noncompliance

21  with a pooling and service agreement or other similar agreement unless they are parties to the

22  agreement or third-party beneficiaries thereto. *See, e.g.*, *Schafer v. CitiMortgage, Inc.*, No. CV 11-

23  03919 ODW (FFMx), 2011 WL 2437267 (C.D. Cal. June 15, 2011) (denying defendants' motion

24  to dismiss declaratory relief claim, which was based on alleged improper transfer due to alleged

25  fraud in signing of documents); *Aniel v. GMAC Mortg., LLC*, No. C 12-04201 SBA, 2012 WL

26

27  [4] Plaintiffs' Oppositions are almost exactly identical, and the Court refers only to the Opposition to BOA in this Order.

28  [5] Plaintiffs allege that MERS issued the SOT, but the SOT was actually issued by Bank of America, acting as attorney in fact for Citibank. *See* FAC ¶ 42; BOA RJN at C.

1  5389706, at *4 (N.D. Cal. Nov. 2, 2012) (plaintiffs lacked standing to challenge assignment of

2  deed of trust or to enforce pooling and service agreement); *Almutarreb v. Bank of New York Trust*

3  *Co., N.A.*, No. C-12-3061 EMC, 2012 WL 4371410, at *2 (N.D. Cal. Sept. 24, 2012) (plaintiffs

4  lacked standing to enforce pooling and service agreement). This Court follows the majority

5  approach. *See Bergman*, 2013 WL 5863057, at *16.

6          Plaintiffs' reliance on *Glaski v. Bank of Am., Nat'l Ass'n*, 218 Cal. App. 4th 1079, 1083

7  (2013), is misplaced. That case held that the transfer of a deed of trust to a securitized trust after

8  the closing date required by a pooling and service agreement could render the deed of trust void

9  under New York law. *See* FAC ¶ 40; Opp'n to BOA at 3–6. However, as Judge Alsup recently

10  observed, "every court in this district that has evaluated *Glaski* has found it unpersuasive." *Zapata*,

11  2013 WL 6491377, at *2 (citing *Subramani v. Wells Fargo Bank N.A.*, 3:13-cv-1605-SC, 2013

12  WL 5913789, at *3 (N.D. Cal. Oct. 31, 2013); *Dahnken v. Wells Fargo Bank, N.A.*, 3:13-cv-2838-

13  PJH, 2013 WL 5979356, at *2 (N.D. Cal. Nov. 8, 2013); *Maxwell v. Deutsche Bank Nat'l Trust*

14  *Co.*, 3:13–cv–3957-WHO, 2013 WL 6072109, at *2 (N.D. Cal. Nov. 18, 2013)). *See also Nguyen*

15  *v. J.P. Morgan Chase Bank N.A.*, 5:12-CV-04183-PSG, 2014 WL 207105, at *2 (N.D. Cal. Jan.

16  16, 2014) (citing *Zapata*); *Apostol v. CitiMortgage, Inc.*, 13-CV-01983-WHO, 2013 WL 6328256,

17  at *6 (N.D. Cal. Nov. 21, 2013); *Rivac*, 2013 WL 6662762, at *4.

18          This Court declines to follow *Glaski* and it instead follows the majority rule of *Jenkins v.*

19  *JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497 (2013), which held that "[a]s an unrelated

20  third party to the alleged securitization, and any other subsequent transfers of the beneficial

21  interest under the promissory note, [a plaintiff] lacks standing to enforce any agreements,

22  including the investment trust's pooling and servicing agreement, relating to such transactions."

23  *Id*. at 515. Thus, Plaintiffs have no standing to base their claims for relief on the securitization

24  process or a breach of the PSA.

25          In their Oppositions, Plaintiffs argue that the Court should apply *Glaski* and New York law

26  because "California law is not specifically chosen by the parties under the terms of the DOT." *See*

27  Opp'n to BOA at 12. However, as Defendants correctly point out, this assertion is contradicted by

28  the DOT itself, which provides that "[t]his Security Instrument shall be governed by federal law

and the law of the jurisdiction in which the property is located." *See* BOA RJN Ex. A ¶ 14; Defs.' Bank of America and Recontrust's Reply to Opp'n at 3 ("BOA Reply"). Here, the Property is located in California and thus California law applies.

Plaintiffs also argue that "the late assignment should be void instead of voidable "under the ultra vires doctrine imposed on borrowers under *Calderon v. Bank of Am. N.A.*, [941 F. Supp. 2d 753 (W.D. Tex. 2013)]." FAC ¶ 40. However, Plaintiffs misstate the holding in *Calderon*—that case actually held that even if the transfer to the securitized trust was after the closing date of the pooling and service agreement, an "after-the-deadline transaction would merely be voidable at the election of one or more of the parties—not void" under New York law. *See id.* at *11; *Boza v. U.S. Bank Nat. Ass'n*, LA CV12-06993 JAK, 2013 WL 5943160, at *6 (C.D. Cal. Oct. 28, 2013) (citing *Calderon* for the proposition that *Glaski* represents a minority view).

Similarly, Plaintiffs do not have standing to challenge the Assignment of DOT because they are not parties or third-party beneficiaries to it. "A majority of district courts in California have held that borrowers do not have standing to challenge the assignment of a loan because borrowers are not parties to the assignment agreement." *Rivac*, 2013 WL 6662762, at *8 (citing *In re Sandri*, 501 B.R. 369, 374–77 (Bankr. N.D. Cal. Nov. 4, 2013); *Gilbert v. Chase Home Fin., LLC*, 1:13-CV-265 AWI SKO, 2013 WL 2318890, at *3 (E.D. Cal. May 28, 2013); *Aniel*, 2012 WL 5389706, at *4; *Ganesan v. GMAC Mortgage, LLC*, C 12-1935 MEJ, 2012 WL 4901440, at *4 (N.D. Cal. Oct. 15, 2012)). *See also Penney v. Wells Fargo Bank, NA*, 2:11-CV-05567-ODW, 2012 WL 2071705, at *11 (C.D. Cal. June 8, 2012) (quoting *Velasco v. Sec. Nat. Mortgage Co.*, 823 F. Supp. 2d 1061, 1067 (D. Haw. 2011)) ("[A]s strangers to the Assignment and without any evidence or reason to believe that they are intended beneficiaries of that contract, Plaintiffs may not dispute the validity of the Assignment.").[6]

Importantly, Plaintiffs also fail to allege plausibly that they incurred any damages as a

---

[6] Plaintiffs also state in their Oppositions that they have obtained a "Property Securitization [sic] Report" dated February 7, 2014 and authored by Robert Ramers, which "indicates that Plaintiffs Note was sold, transferred and securitized into the aforementioned [CWABS Trust]." Opp'n to BOA at 3. This report is not attached for the Court's review, nor are its contents divulged in any detail but, in any case, it does not change the Court's holding that Plaintiffs do not have standing to challenge the PSA or the Assignment of DOT.

United States District Court
Northern District of California

1   result of these purported irregularities in the securitization process. Accordingly, Plaintiffs' broken

2   chain of title theory fails, and all of the claims that depend on it also fail, as described below. The

3   Court does not reach the tender rule.

4         **B.**       **Breach of Express and Implied Agreements**

5         Plaintiffs allege in their first and second causes of action that Defendants breached (1) the

6   DOT by executing an invalid NOD or improperly causing the NOD to be recorded; and (2) the

7   PSA by failing to record the assignment of the DOT to the certificate holders of the CWABS Trust

8   within the timeframe required by the PSA. *See* FAC ¶¶ 26–27, 30. Plaintiffs do not specifically

9   allege the existence or breach of any distinct implied agreement. *See id.* ¶¶ 30–37. Thus, the Court

10  treats Plaintiffs' claims for "Breach of Express Agreement" and "Breach of Implied Agreement"

11  together as breach of contract claims.

12        **1.**       **Breach of DOT**

13        Under California law, "[a] contract is either express or implied." *Retired Emps. Ass'n of*

14  *Orange Cnty., Inc. v. County of Orange*, 52 Cal. 4th 1171, 1178 (2011) (citing Cal. Civ. Code

15  § 1619). "The existence and terms of an express contract are stated in words." *Id.* (citing Cal. Civ.

16  Code § 1620). "The existence and terms of an implied contract are manifested by conduct." *Id.*

17  (citing Cal. Civ. Code § 1621). "The distinction reflects no difference in legal effect but merely in

18  the mode of manifesting assent." *Id.* "Accordingly, a contract implied in fact consists of

19  obligations arising from a mutual agreement and intent to promise where the agreement and

20  promise have not been expressed in words." *Id.* (internal quotation and citation omitted). The

21  elements of a cause of action for breach of an express or implied contract are the same. *See Gomez*

22  *v. Lincare, Inc.*, 173 Cal. App. 4th 508, 525 (2009). The elements are: (1) the existence of the

23  contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the

24  defendant; and (4) damages. *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745

25  (2001).

26        Here, Plaintiffs allege that Defendants breached the DOT by executing an invalid NOD or

27  improperly causing the NOD to be recorded. FAC ¶ 24. Plaintiffs base their allegations on the

28  theory described above, *i.e.*, that the Assignment of DOT to Citibank was late and in violation of

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1  the PSA, such that Citibank never actually acquired the interest in the DOT. *See id.*; Opp'n to

2  BOA at 6–7. Plaintiffs allege that they are excused from performance under the DOT because they

3  were "never in default to the true beneficiary, the certificate holders of the [CWABS Trust]." *See*

4  *id.* ¶ 27.

5       Defendants argue that Plaintiffs' claim relies on their challenge to the validity of the

6  Assignment, but Plaintiffs lack standing to challenge it. *See* BOA Mot. at 4–5, 7; MERS Mot. at 5,

7  7, 8. Defendants also argue that Plaintiffs have not shown that they performed or were excused

8  from performing their obligations under the DOT. *See* BOA Mot. at 7–8; MERS Mot. at 8.

9       The Court agrees with Defendants. First, as explained above, Plaintiffs are not parties to

10  the Assignment, and they are precluded from challenging its validity. Plaintiffs do not sufficiently

11  plead that the Assignment or any of the subsequently recorded documents are invalid. *See* Part

12  V.A., *supra*.

13      Second, Plaintiffs allege no facts showing that they performed under the DOT—*i.e.*, that

14  they have made their loan payments—and thus, as a matter of law, cannot maintain a claim for

15  breach of the DOT. *See Rivac*, 2013 WL 6662762, at *8 (dismissing breach of deed of trust claim

16  because, *inter alia*, plaintiffs failed to allege performance or excuse for non-performance).

17  Plaintiffs do not allege plausibly that they are not in default on their loan. Their argument that they

18  were excused from performance because of the broken chain of title fails, because they do not

19  have standing to challenge the Assignment of DOT or allege a breach of the PSA. *See* Part V.A.,

20  *supra*.

21      Furthermore, Plaintiffs' argument relies on the premise that Quality Home Loans

22  successfully divested itself of its interest in the DOT, but that Citibank (as trustee for the CWABS

23  Trust) did not successfully acquire that same interest by virtue of the allegedly late Assignment of

24  DOT. This argument also relies on the mutually exclusive premise that Citibank is actually a party

25  to the DOT such that the DOT can be enforced against it in a breach of contract claim.

26  Additionally, Plaintiffs have not alleged how Bank of America or MERS contributed to the

27  recordation of the NOD, which is the basis of the breach of DOT claim.

28      Finally, Plaintiffs have not pled plausibly that any damages they suffered were a result of

10

1  the alleged breach of the DOT, as opposed to their own default on the loan obligation. *See*

2  *Bergman*, 2013 WL 5863057, at *17 (dismissing breach of DOT claim brought by Plaintiffs'

3  counsel with prejudice because, *inter alia*, plaintiffs failed to allege damages plausibly).

4       Because Plaintiffs cannot cure the fact that they lack standing to challenge the Assignment

5  and this challenge is the basis of their breach of DOT claim, amendment would be futile. *See In re*

6  *Vantive Corp.*, 283 F.3d at 1097. *See, e.g.*, *Bergman*, 2013 WL 5863057, at *15–*16 (dismissing

7  similar breach of DOT claim brought by Plaintiffs' counsel with prejudice). Accordingly, the

8  breach of contract claims, to the extent they are based in a breach of the DOT, are DISMISSED

9  WITH PREJUDICE.

10                **2.**      **Breach of PSA**

11       Plaintiffs allege that the Assignment of DOT was not timely under the CWABS Trust's

12  PSA because it occurred five years after the actual transfer occurred. FAC ¶ 26. Plaintiffs allege

13  that they are third-party beneficiaries to the PSA because

14          Defendants' PSA provides a duty to defend, distribution, reporting,
15          and indemnification by and among the parties and their agents,
        including servicers, whose agents, the tsrustee, are contractually
16          bound to the borrower/Plaintiff under the PSA and the DOT . . . .

17  *Id.* Plaintiffs allege that they were damaged "in that Plaintiffs risk losing title to their Property if

18  the power of sale clause [of the DOT] is enforceable" and that they were forced to incur attorney's

19  fees and costs to bring this action. *Id.* ¶ 36.

20       Defendants argue that Plaintiffs lack standing to enforce the PSA because they are not

21  parties to it. *See* BOA Mot. at 8; MERS Mot. at 9.

22       The Court agrees with Defendants. Plaintiffs do not allege that they are parties to the PSA.

23  Their allegation that they are third-party beneficiaries is devoid of factual enhancement and

24  implausible. *See Iqbal*, 556 U.S. at 678. Following the majority position, Plaintiffs do not have

25  standing to enforce the PSA. *See* Part V.A., *supra*.

26       Plaintiffs' claim fails for the additional reason that they do not plausibly allege any

27  damages flowing from the alleged breach of the PSA. Assuming that Plaintiffs are correct—that

28  the Assignment of DOT to Citibank was untimely pursuant to the PSA—Plaintiffs have failed to

United States District Court
Northern District of California

1   allege how any damages were caused by an improper assignment, as opposed to their own

2   default.[7]

3           Because Plaintiffs cannot cure the fact that they lack standing to challenge the PSA,

4   amendment would be futile. *See In re Vantive Corp.*, 283 F.3d at 1097. *See, e.g.*, *Madlaing*, 2013

5   WL 2403379, at \*26 (dismissing all claims brought by Plaintiffs' counsel, including breach of a

6   pooling and servicing agreement, with prejudice). Accordingly, the breach of contract claims, to

7   the extent they are based in a breach of the PSA, are DISMISSED WITH PREJUDICE.

8           **C.      Slander of Title**

9           The required elements of a claim for slander of title are "(1) a publication, (2) without

10  privilege or justification, (3) falsity, and (4) direct pecuniary loss." *Sumner Hill Homeowners'*

11  *Ass'n Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999, 1030 (2012). "Direct pecuniary

12  loss" is restricted to:

13              (a) the pecuniary loss that results directly and immediately from the
14              effect of the conduct of third persons, including impairment of
                vendibility or value caused by disparagement, and (b) the expense of
15              measures reasonably necessary to counteract the publication,
                including litigation to remove the doubt cast upon vendibility or
16              value by disparagement.

17  *Ryan v. Editions Ltd. W., Inc.*, No. C-06-4812-PVT, 2007 WL 4577867, at \*12 (N.D. Cal. Dec.

18  27, 2007) (quoting *Appel v. Burman*, 159 Cal. App. 3d 1209, 1215 (1984); Rest. 3d Torts § 633).

19          Here, Plaintiffs allege that the recordation of the Assignment of DOT, the SOT, and the

20  NOD placed an improper cloud on Plaintiffs' title to the Property because these documents were

21  recorded by entities who did not have the authority to do so as a result of the broken chain of title

22  described above, and because they were improper in form. *See* FAC ¶¶ 39–47. They allege that as

23  a result, they suffered an impairment of vendibility, and they were forced to incur attorney's fees

24  in bringing this action. *Id.* ¶¶ 46–47. In their Oppositions, they argue that they were

25  _____

26  [7] Plaintiffs also allege that their counsel, on their behalf, is a "whistleblower to this scheme under the authority and at
    the request of the Internal Revenue Service, pursuant to 26 U.S.C. 7801 . . . ." *Id.* Because Plaintiffs do not assert a
27  separate cause of action based on Defendants' alleged violation of the Internal Revenue Code, the Court need not
    address it in deciding the Motions. *See Kirk v. Wells Fargo Bank, N.A.*, C 12-05969 SI, 2013 WL 132519, at \*1 n.1
    (N.D. Cal. Jan. 9, 2013) (taking same approach). Nonetheless, the Court notes that this claim is not supported by any
28  plausible factual allegations and would thus fail.

United States District Court
Northern District of California

> prejudiced by Defendants' assertion of the right to foreclose because the false Assignment, SOT, and NOD are the foundation for Defendants' attempts to complete a wrongful foreclosure of Plaintiffs' property. Without the improper and false assignment, these Defendants' [sic] would not have initiated this foreclosure.

Opp'n to BOA at 10.

Defendants argue that the slander of title claim is based on the same faulty challenges to the chain of title that were alleged in the breach of contract claims. BOA Mot. at 9; MERS Mot. at 10. Defendants also argue that Plaintiffs fail to allege malice because securitization did not break the chain of title, and MERS did in fact have the authority to assign the DOT. BOA Mot. at 9–10; MERS Mot. at 10–11. Defendants also argue that Plaintiffs fail to allege actionable pecuniary harm. BOA Mot. at 10; MERS Mot. at 11.

The Court agrees with Defendants. Plaintiffs allege properly the first element of publication because the Assignment of DOT, SOT, and NOD are publicly recorded documents. *See* BOA RJN Exs. B–D; *Ghuman v. Wells Fargo Bank*, No. 1:12-CV-00902-AWI-BAM, 2013 WL 552097, at *4 (E.D. Cal. Feb 13, 2013) (recording of assignment of deed of trust, substitution of trustee, and notices of default and trustee's sale constituted publication). However, Plaintiffs fail to plead adequately any of the other elements.

First, Plaintiffs fail to allege plausibly that any of the Defendants acted with malice. Plaintiffs do not allege why any of the Defendants would have known that "no Defendant could be the true beneficial interest holder." *See* Opp'n to BOA at 9. Plaintiffs fail to allege properly that (1) MERS recorded the Assignment of DOT, (2) Bank of America recorded the SOT, or (3) Recontrust recorded the NOD, with knowledge that authority to do so was lacking, because Plaintiffs fail to allege properly that these entities actually lacked authority—their only argument is the broken chain of title theory, which fails. *See* Part V.A., *supra*.

Second, Plaintiffs fail to plead falsity. Their theory is that "[t]he recorded documents are false due to the fact that the purported trustee had no authority to act on behalf of the beneficial interest holder." Opp'n to BOA at 7. However, as discussed above, they have not alleged plausibly that any of the Defendants lacked authority to record the documents and thus they have not alleged plausibly that any of the documents are false or invalid. Plaintiffs also argue that the NOD is false

1    because of various alleged violations of section 2923.5 of the California Civil Code. These

2    arguments have no merit, as discussed below in Part V.D., *infra*.

3         Third, Plaintiffs have not pled adequately that they suffered pecuniary loss as a direct

4    result of Bank of America's publications. They allege that they suffered harm based on two

5    theories: (1) the vendibility of their property was impaired; and (2) they incurred attorneys' fees in

6    bringing "this action to cancel the instruments casting doubt on" their title. FAC ¶¶ 46–47.

7         The vendibility theory fails because Plaintiffs fail to allege any facts to support their "bare

8    assertion" of impaired vendibility. *See Ogilvie v. Select Portfolio Servicing*, 12-CV-001654-DMR,

9    2012 WL 3010986, at *4 (N.D. Cal. July 23, 2012) (dismissing similar slander of title claim for

10   failure to make proper allegations of, *inter alia*, pecuniary harm based on impaired vendibility);

11   *Cerezo v. Wells Fargo Bank, N.A.*, 13-1540 PSG, 2013 WL 4029274, at *6 (N.D. Cal. Aug. 6,

12   2013) (dismissing similar slander of title claim for failure to make proper allegations of, *inter alia*,

13   pecuniary harm based on impaired vendibility because plaintiffs had not alleged existence of any

14   impending sale).

15        The attorneys' fees theory fails because Plaintiffs have failed to allege properly that they

16   have incurred any fees "to remove the doubt cast upon vendibility or value." *See Ryan v. Editions

17   Ltd. W., Inc.*, C-06-4812 PVT, 2007 WL 4577867, at *12 (N.D. Cal. Dec. 27, 2007); *Ogilvie*, 2012

18   WL 3010986, at *4 (dismissing similar slander of title claim for failure to make proper allegations

19   of, *inter alia*, pecuniary harm based on attorneys' fees incurred in bringing slander of title action);

20   *Christiansen v. Wells Fargo Bank*, C 12-02526 DMR, 2012 WL 4716977, at *6 (N.D. Cal. Oct. 1,

21   2012) (same); *Mena v. JP Morgan Chase Bank, N.A.*, 12-1257 PSG, 2013 WL 150716, at *3–*4

22   (N.D. Cal. Jan. 14, 2013) (citing *Ogilvie*, 2012 WL 3010986, at *4) (dismissing similar slander of

23   title claim for failure to make proper allegations of pecuniary harm based on attorneys' fees

24   incurred in bringing slander of title action); *Nguyen v. JP Morgan Chase Bank, N.A.*, CV12-04183

25   PSG, 2012 WL 4942816, at *3–*4 (N.D. Cal. Oct. 17, 2012) (same). *But see Barrionuevo v.

26   Chase Bank, N.A.*, 885 F. Supp. 2d 964, 975 (N.D. Cal. 2012) (plaintiffs stated a claim for slander

27   of title); *Ghuman*, 2013 WL 552097, at *4 (finding pecuniary harm element met by expenditure of

28   resources seeking to cancel instruments, but dismissing slander of title claim on failure to plead

United States District Court
Northern District of California

14

falsity).

Plaintiffs state that the recording of the "false documents including the October 3, 2006 [DOT] made it necessary for Plaintiffs to retain attorneys and to bring this action to cancel the instruments casting doubt on" their title. *See* FAC ¶ 47. Putting aside the fact that Plaintiffs fail to explain why the DOT is false, this is merely a "formulaic recitation" of an element devoid of any elaboration, and it does not suffice. *See Iqbal*, 556 U.S. at 678. Because Plaintiffs fail to allege properly that they suffered any direct harm in the form of impaired vendibility, it follows that they fail to allege properly that they suffered any indirect harm in the form of attorneys' fees to clear doubt regarding vendibility. While "[a]ttorneys' fees arising from a quiet title action may be used to show harm[,] fees from the prosecution of the slander of title action may not." *Cerezo*, 2013 WL 4029274, at *6 (citing *Ogilvie*, 2012 WL 3010986, at *4).

Finally, the theory that Plaintiffs suffered prejudice because the wrong party initiated foreclosure as a result of the allegedly false recorded documents fails because, as discussed above, Plaintiffs have not properly alleged that the recorded documents are false. *See* Part V.A., *supra*.

Accordingly, the slander of title claim is DISMISSED WITH PREJUDICE because Plaintiffs' legal theory is fatally flawed. *See* Part V.A., *supra*.

### D.     Wrongful Foreclosure

In California, a claim for wrongful foreclosure has the following elements: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Lona*, 202 Cal. App. 4th at 104.

Here, Plaintiffs again allege that because of the allegedly late Assignment of DOT, there was a break in the chain of title, and neither the original lender nor Citibank now hold the beneficial interest of the DOT. FAC ¶¶ 51–53, 55–56. Thus, according to Plaintiffs, there can be no valid foreclosure, and allowing the foreclosure to go forward would violate the statutory scheme governing nonjudicial foreclosures. *Id.* ¶¶ 51, 54–55. Additionally, Plaintiffs allege that

United States District Court
Northern District of California

15

1    the foreclosure documents are also invalid because of "robo-signing," "falsification" and "because

2    Plaintiffs were never served with the NOD." *Id.* ¶¶ 50, 51. As to prejudice, Plaintiffs allege that

3    allowing the foreclosure to go forward "would cause Plaintiffs to wrongfully lose their home," that

4    there is a "cloud" on their title, and that they do not need to establish inadequacy of the legal

5    remedy in this case because land is unique. FAC ¶¶ 54, 57–58. Plaintiffs also argue that they are

6    excused from the tender rule because the trustee's deed is void.[8] *Id.* ¶ 57.

7        Defendants argue that the wrongful foreclosure claim must fail because it is based on the

8    faulty theories of the broken chain of title and robo-signing. BOA Mot. at 10–11; MERS Mot. at

9    12. Defendants also argue that Plaintiffs fail to show prejudice. BOA Mot. at 11; MERS Mot. at

10   13. Finally, Defendants argue that Plaintiffs fail to establish that they are excused from proffering

11   tender. BOA Mot. at 12; MERS Mot. at 14.

12       The Court agrees with Defendants. Plaintiffs' wrongful foreclosure claim relies upon the

13   same faulty theories as the breach of contract and slander of title claims, which the Court has

14   already rejected. *See* Parts V.A.–C., *supra*. The robo-signing theory also fails because it is

15   completely devoid of factual allegations. *See Iqbal*, 556 U.S. at 678; *Baldoza v. Bank of America,*

16   *N.A.*, C-12-05966 JCS, 2013 WL 978268, at *13 (N.D. Cal. Mar. 12, 2013) ("District courts have

17   consistently refused to find that a plaintiff can state a claim on the basis of a conclusory allegation

18   of robo-signing, absent some factual support.") (collecting cases). Although Plaintiffs do not

19   allege which documents were subject to robo-signing, they presumably intend to refer to the

20   Assignment of DOT, the SOT, and the NOD. These documents were properly executed. The

21   Assignment was properly executed by a representative of MERS, the nominee for the lender under

22   the DOT. *See* BOA RJN Ex. B. The SOT was properly executed by a representative of Bank of

23   America, acting as attorney in fact for Citibank as trustee for the CWABS Trust, the new

24

25   [8] Plaintiffs also allege that the late Assignment means that Citibank "must pay the 100% tax penalty that violation of these documents causes to accrue." FAC ¶ 52. As with the tax-related allegation discussed above in connection with

26   the breach of the PSA claim, the Court does not need to address this claim because plaintiff does not assert a separate cause of action based on this allegation. *See* Part V.A.2., *supra*. *See Kirk*, 2013 WL 132519, at *1 n.1. Nonetheless,

27   the Court notes that this claim is not supported by any plausible factual allegations and would thus fail.

28   Additionally, in their Oppositions, Plaintiffs make various arguments that refer to entities that are not parties to this case, such as "Countrywide" and "JPMorgan," and the Court disregards these arguments. *See* Opp'n to BOA at 12–13.

United States District Court
Northern District of California

16

1   beneficiary under the DOT. *See* BOA RJN Ex. Ex. C. The NOD was properly executed by a

2   representative of Recontrust, as agent for the beneficiary. *See* BOA RJN Ex. D.

3          Furthermore, Plaintiffs fail to allege prejudice because they do not allege plausibly that

4   they did not default on their loan obligations, and they have failed to allege any facts to suggest

5   that they would not have been foreclosed upon anyway. *See Natividad v. Wells Fargo Bank, N.A.*,

6   3:12-CV-03646 JSC, 2013 WL 2299601, at *16 (N.D. Cal. May 24, 2013) (quoting *Albano v.*

7   *Cal–W. Reconveyance Corp.*, No. 4:12-cv-4018 KAW, 2012 WL 5389922, at *6 (N.D. Cal. Nov.

8   5, 2012)) ("The prejudice or harm element is met only if a plaintiff demonstrates that the

9   foreclosure would have been averted but for the alleged deficiencies."); *Christiansen*, 2012 WL

10  4716977, at *7 (quoting *Ghuman*, 2012 WL 2263276, at *5 ("Plaintiffs would be hard pressed to

11  show any conceivable prejudice, given Plaintiffs have offered no facts to suggest the substitution

12  of [trustee] (or the allegedly improper recording thereof) adversely affected their ability to pay

13  their debt or cure their default."). The Court does not reach the tender rule.

14         Accordingly, the wrongful foreclosure claim is DISMISSED WITH LEAVE TO AMEND.

15  To the extent that the wrongful foreclosure claim relies on the broken chain of title theory, it is

16  DISMISSED WITH PREJUDICE because that theory is fatally flawed. *See* Part V.A., *supra*.

17         **E.     California's Unfair Competition Law**

18         California's Unfair Competition Law ("UCL") prohibits "unfair competition," defined as

19  any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. A

20  claim may be brought under the UCL "by a person who has suffered injury in fact and has lost

21  money or property as a result of unfair competition." *Id.* § 17204. Therefore, to establish standing

22  under the UCL, a plaintiff must "(1) establish a loss or deprivation of money sufficient to qualify

23  as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e.,

24  *caused by*, the unfair business practice . . . that is the gravamen of the claim." *Lawther v. OneWest*

25  *Bank, FSB*, No. C-10-00054 JCS, 2012 WL 298110, at *23 (N.D. Cal. Feb. 1, 2012) (quoting

26  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011)) (emphasis in original).

27         Plaintiffs allege that Defendants violated the UCL by executing the "false" Assignment of

28  DOT and recording the NOD, "knowing that it did not hold the beneficial interest in the [DOT],

United States District Court
Northern District of California

and thus lacked the legal power to initiate a foreclosure." FAC ¶¶ 118–120.

Defendants argue that Plaintiffs have failed to allege injury and, as a result, they lack standing to pursue the claim. BOA Mot. at 16; MERS Mot. at 19. Defendants also argue that this claim should be dismissed because the UCL is a derivative cause of action and Plaintiffs have not properly pled any other claims. BOA Mot. at 17; MERS Mot. at 19–20.

The Court agrees with Defendants. Plaintiffs fail to allege an economic injury caused by any of Defendants' challenged practices and, as such, they lack standing under the UCL. Further, the Court by this Order dismisses all of Plaintiffs' claims. Accordingly, Plaintiffs' UCL claim is DISMISSED WITH LEAVE TO AMEND.

### F.      Violations of Cal. Civ. Code § 2923.5

Plaintiffs allege several violations of section 2923.5 of the California Civil Code. These allegations are substantively the same as some of those made in connection with the falsity element of the slander of title claim. *See* Part V.B., *supra*. As such, both sets of allegations are discussed together here.

First, Plaintiffs allege that they were never actually contacted and that Bank of America, as agent of Citibank, never tried with due diligence to contact them, in violation of section 2923.5. *See* FAC ¶¶ 45, 61; Opp'n to BOA at 14. However, section 2923.5 does not require that actual contact be made; it merely requires that a servicer has attempted such contact with "due diligence." *Ghuman*, 2013 WL 552097, at *9. As to lack of effort, Plaintiffs' allegations are devoid of factual enhancement and conclusory. *See Iqbal*, 556 U.S. at 678.

Second, Plaintiffs allege that there is no declaration of compliance with section 2923.5 attached to the recorded NOD, but this is contradicted by the judicially noticed NOD in the record. *See* FAC ¶ 61; BOA RJN Ex. D at 4. Plaintiffs also provide no support for their allegation that the declaration was added "perhaps after recordations." *See* FAC ¶¶ 45, 62. The recorder's stamp indicates that the recorded NOD is four pages, and the submitted document is four pages, including the section 2923.5 declaration. *See* BOA RJN Ex. D. In their Oppositions, Plaintiffs appear to argue that the declaration was invalid because it was signed by a representative of Bank of America, a "stranger" to the DOT. Opp'n to BOA at 14. However, Plaintiffs do not allege that

United States District Court
Northern District of California

18

1    Bank of America was acting improperly as an agent of Recontrust, the trustee to the DOT, or

2    Citibank, the beneficiary of the DOT.

3          Third, Plaintiffs allege that the section 2923.5 declaration recorded with the NOD was

4    "fabricated by an employee of Citibank purporting to be an employee of Landsafe Title,

5    purporting to be an agent of Recontrust . . . ." FAC ¶¶ 45, 62. To the extent that this is a robo-

6    signing argument, it fails because the declaration was executed by a representative of Bank of

7    America, which was apparently acting as Citibank's agent. *See* BOA RJN Ex. D at 4; *Baldoza*,

8    2013 WL 978268, at *13.

9          Fourth, Plaintiffs argue that the NOD is false because the version sent to Plaintiffs does not

10   exactly match the recorded version. *See* FAC ¶¶ 45, 62. Specifically, the recorded NOD includes

11   the words "Landsafe Title" and "see Attached Declaration" on the first page, but these words are

12   not included in the version served on Plaintiffs. *See id. Compare id.* Ex. B at 1 *with* BOA RJN Ex.

13   D at 1. Additionally, the words "Form Insert (01/10)" were included in the version served on

14   Plaintiffs but not on the recorded NOD. *See* FAC ¶¶ 45, 62. *Compare id.* Ex. B at 4 *with* BOA

15   RJN Ex. D at 4. This argument fails because Plaintiffs have not cited any authority for the

16   proposition that served and recorded notices of default must be exactly identical, pursuant to

17   section 2923.5 or any other authority. The Court fails to see the legal import of the discrepancies

18   that Plaintiffs point out. Plaintiffs also do not elaborate on their bare allegation that "additional

19   language" was later added to the recorded NOD. *See* FAC ¶¶ 45, 62.

20         Accordingly, the section 2923.5 claim is DISMISSED WITH LEAVE TO AMEND.

21         **G.    Racketeer Influenced and Corrupt Organizations Act**

22         The Racketeer Influenced and Corrupt Organizations Act ("RICO") imposes civil liability

23   on persons and organizations engaged in a "pattern of racketeering activity." 18 U.S.C. 1962(c).

24   Racketeering activity is defined to include a number of generically-specified criminal acts, as well

25   as the commission of one of a number of listed predicate offenses. 18 U.S.C. 1961(1). The

26   elements of a civil RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of

27   racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or

28   property.'" *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996). Plaintiffs must additionally meet

United States District Court
Northern District of California

19

1    the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure to state a

2    claim under RICO. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).

3    Plaintiffs fail to do so.

4           Here, Plaintiffs allege that Defendants concealed the securitization of Plaintiff's loans,

5    "br[ought] suit on behalf of entities that were not the real parties in interest," "conceal[ed] the

6    parties' lack of standing," "draft[ed] . . . fraudulent affidavits and documents," including

7    documents executed by robo-signers, and conveyed foreclosure-related documents using the U.S.

8    Mail and the internet. *See* FAC ¶ 67. Plaintiffs allege that Defendants carried out these acts as part

9    of "a scheme to defraud everyone." *Id.* ¶ 72.

10          This Court, along with several other federal courts in California, have dismissed with

11   prejudice RICO claims brought by Plaintiffs' counsel and based in allegations nearly identical in

12   substance and wording to the claim here. *See Bergman*, 2013 WL 5863057, at *29 (collecting

13   cases). For example, the Court has compared the FAC here to the complaint in the recent case

14   *Zapata*, 2013 WL 6491377, at *4–*5, and finds that it appears to be word-for-word identical,

15   except for two paragraphs that attempt to establish predicate acts of the cases' respective

16   defendants by referring to other unrelated state and federal cases. *Compare* FAC ¶¶ 65–98 *with*

17   *Zapata*, C 13-04288 WHA, Dkt. No. 1 ¶¶ 74–108.

18          The Court adopts the reasoning of previous cases and finds that Plaintiffs' claim here is

19   "far from plausible." *See Zacharias v. JPMorgan Chase Bank, N.A.*, No. 12–06525 SC, 2013 WL

20   588757, at *3–*4 (N.D. Cal. Feb. 13, 2013) (summarizing RICO allegations that are nearly

21   identical to those in this claim; dismissing claim as "far from plausible" and "simply improper").

22   Plaintiffs "put forward no facts supporting [their] 'sweeping contention that Defendants defrauded

23   everyone' by bringing suit on behalf of entities without standing to sue." *See Quach v. Bank of*

24   *Am., N.A.*, 5:13-CV-00467-EJD, 2013 WL 3788827, at *3 (N.D. Cal. July 17, 2013) (quoting

25   *Zacharias*, 2013 WL 588757, at *3). They fail to allege facts of an ongoing organization to

26   support the contention that Defendants function as an "enterprise." *See Madlaing*, 2013 WL

27   2403379, at *22. They fail to make any plausible allegations of racketeering activities that are

28   distinct from the alleged enterprise. *See Zacharias*, 2013 WL 588757, at *3. They fail to allege

United States District Court
Northern District of California

20

that the loan constitutes an unlawful debt, *e.g.*, an unlawful gambling debt. *See Madlaing*, 2013 WL 2403379, at *23; 18 U.S.C. § 1961(6) (defining "unlawful debt"). They fail to identify authority to support their contention that Defendants had a duty to make disclosures regarding securitization.[9] *See Gilbert*, 2013 WL 2318890, at *10. Moreover, securitization is neither a crime nor racketeering activity. *See Rivac*, 2013 WL 3476659, at *8. They fail to allege plausibly that any injury was proximately caused by Defendants' activities and not their own default. *See id.* at *8 (dismissing similar RICO claim because, *inter alia*, only alleged damages arose from plaintiff's default rather than defendants' actions); *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002).

Furthermore, Plaintiffs fail to meet the Rule 9(b) pleading standard because they have not provided any specific allegations identifying which Defendant took which actions, nor have they made any specific allegations about the times, places, and specific content of the activities. For example, Plaintiffs appear to allege that Defendants committed the predicate acts of mail fraud in furtherance of the "enterprise." *See* FAC ¶ 67. But they do not "state the time, place, and specific content" of any of the alleged mailings, nor do they state "the identities of the parties to the misrepresentation." *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004); *Gilbert*, 2013 WL 2318890, at *10. Rather than pleading predicate acts relevant to this action, Plaintiffs instead attempt to incorporate facts and declarations from other unrelated state and federal actions. *See* FAC ¶¶ 68–71.

The Court finds that, as in previous cases, "Plaintiff[s'] attempt to cast a straightforward foreclosure proceeding as a pattern of racketeering activity is simply improper." *Zacharias*, 2013 WL 588757, at *3. Accordingly, the RICO claim is DISMISSED WITH PREJUDICE.

## H.    Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act ("FDCPA") provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection

---

[9] In fact, the DOT provides that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." BOA RJN Ex. A ¶ 20.

1    of any debt" and that a "debt collector may not use unfair or unconscionable means to collect or

2    attempt to collect any debt." 15 U.S.C. §§ 1692e, 1692f. FDCPA claims have a statute of

3    limitations of one year from the date on which the violation occurred. 15 U.S.C. § 1692k(d).

4        The FDCPA defines the term "debt collector" to include: (1) "any person who uses any

5    instrumentality of interstate commerce or the mails in any business the principal purpose of which

6    is the collection of any debts," and (2) any person "who regularly collects or attempts to collect,

7    directly or indirectly, debts owed or due or asserted to be owed or due to another." *Id.* § 1692a(6).

8    In order to adequately plead this claim, a plaintiff must allege specific facts showing that a

9    defendant is a "debt collector" within the meaning of the statute. *Schlegel v. Wells Fargo Bank,*

10   *NA*, 720 F.3d 1204, 1208 (9th Cir. 2013).

11       As to the definition of "debt collection," the Court agrees with other courts in this Circuit

12   which have held that nonjudicial foreclosure is generally not "debt collection." *See Natividad*,

13   2013 WL 2299601, at *5–*9; *Ligon v. JP Morgan Chase Bank*, No. C 11-2504 MEJ, 2011 WL

14   2550836, at *3 (N.D. Cal. June 27, 2011) (collecting cases). The Court adopts Judge Corley's

15   holding that "legally-mandated actions required for mortgage foreclosure are not necessarily debt

16   collection," and that a plaintiff alleging a proper FDCPA claim must allege that the defendant

17   "engaged in an[] action beyond statutorily mandated actions for nonjudicial foreclosure." *See*

18   *Natividad*, 2013 WL 2299601, at *9.

19       Here, Plaintiffs allege that Defendants are debt collectors within the meaning of the

20   FDCPA, and that they violated the FDCPA by failing to provide the FDCPA "Mini–Miranda

21   Warning," *i.e.*, a notice that they are "debt collectors" and attempting to collect on a debt, on the

22   NOD, which was recorded on April 6, 2012. FAC ¶¶ 106–108, 111. Plaintiffs also allege that the

23   Debt Validation Notice that was dated April 4, 2012

24           should have included the amount of the debt, the name of the
             creditor to whom the debt was owed, that Plaintiffs had 30 days to
25           dispute the debt, notification that Plaintiffs had the right to have the
             verification mailed to Plaintiffs, and notification that Plaintiffs can
26           request the name and address of the original creditor within 30 days.
27

28   FAC ¶ 110. Plaintiffs allege that they have suffered damages as a result of Defendants' actions in

1    the form of diminution in value to the Property, impairment of vendibility of the Property, and

2    attorney's fees. *Id.* ¶¶ 113, 114–115. Plaintiffs seek an injunction. *Id.* ¶ 113.

3         Defendants argue that the FDCPA claim fails because Plaintiffs have failed to allege that

4    the nonjudicial foreclosure proceedings that give rise to this action constitute "debt collection" or

5    that Defendants are "debt collectors." *See* BOA Mot. at 15–16; MERS Mot. at 17–18.

6         The Court agrees with Defendants. Plaintiffs do not allege any specific facts to support

7    their conclusory allegation that "Defendants are debt collectors within the meaning of the

8    [FDCPA]." *See* FAC ¶ 106; *Schlegel*, 720 F.3d at 1208. Nor do Plaintiffs allege that any of the

9    Defendants "engaged in any action beyond statutorily mandated actions for nonjudicial

10   foreclosure." *See Natividad*, 2013 WL 2299601, at *9. Thus, the FDCPA claim is not properly

11   alleged against Defendants.

12        The FDCPA claim also fails because it is time-barred. Plaintiffs' allegations pertain to

13   "correspondence or verbal communications regarding Section 2923.5 [of the California Civil

14   Code] compliance, within the NOD, or otherwise." *See* FAC ¶ 108. The Debt Validation Notice

15   and the NOD were both issued in April 2012. *See* FAC Ex. A; BOA RJN Ex. D. Accordingly, any

16   FDCPA claim pertaining to these communications expired in or around April 2013. However,

17   Plaintiffs did not bring the instant action until November 12, 2013. *See* Dkt. No. 1.

18        Accordingly, the FDCPA claim is DISMISSED WITH LEAVE TO AMEND.

19   **I.    Rosenthal Act**

20        The Rosenthal Act is intended "to prohibit debt collectors from engaging in unfair or

21   deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly

22   in entering into and honoring such debts." Cal. Civ. Code § 1788.1. In addition to setting forth its

23   own standards governing debt-collection practices, the Rosenthal Act also provides that, with

24   limited exceptions, "every debt collector collecting or attempting to collect a consumer debt shall

25   comply with the provisions of" the FDCPA. Cal. Civ. Code § 1788.17.

26        Under the Rosenthal Act, a "debt collector" is defined as "any person who, in the ordinary

27   course of business, regularly, on behalf of himself or herself or others, engages in debt collection."

28   Cal. Civ. Code § 1788.2(c). "Debt" is defined as "money, property or their equivalent which is due

United States District Court
Northern District of California

23

1  or owing or alleged to be due or owing from a natural person to another person." Cal. Civ. Code

2  § 1788.2(d).

3       Numerous courts have held that the mere allegation that a defendant foreclosed on a deed

4  of trust does not implicate the Rosenthal Act. *See Reyes v. Wells Fargo Bank, N.A.*, No. C-10-

5  01667 JCS, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011) (collecting cases). Where the claim

6  arises out of debt collection activities beyond the scope of the ordinary foreclosure process,

7  however, a remedy may be available under the Rosenthal Act. *Id.* (finding that allegedly deceptive

8  statements in an offer letter related to a forbearance agreement were sufficient to state a claim

9  under the Rosenthal Act).

10      Here, Plaintiffs allege that they are "debtors," Defendants are "debt collectors," and that

11 Defendants violated section 1788.12(e) of the California Civil Code by

12          falsely representing that consumer debt would be increased by the
            addition of the Collection Penalties when in fact those amounts
13          could not legally be added to the debtor's existing obligation under
            the circumstances existing when Defendant made these
14          representations.

15 FAC ¶¶ 100–102. Further, Plaintiffs allege that Defendants violated section 1788.14(b) by

16 "collecting or attempting to collect a debt collector's fee or charge that was not permitted by law."

17 *Id.* ¶ 103. Plaintiffs allege that Defendants also violated section 1788.17(b) by violating several

18 FDCPA provisions. *Id.* ¶ 104.

19      Defendants argue that this claim fails because Plaintiffs' do nothing more than recite the

20 elements of the cause of action, and because they fail to allege properly that any of the Defendants

21 are "debt collectors" under the Rosenthal Act. BOA Mot. at 14–15; MERS Mot. at 16–17.

22      The Court agrees with Defendants. Plaintiffs' Rosenthal Act allegations do not refer to a

23 single fact specific to this action and thus do not allege facts sufficient to "state a claim to relief

24 that is plausible on its face." *See Iqbal*, 556 U.S. at 663; FAC ¶¶ 99–104. Furthermore, Plaintiffs'

25 allegations appear to arise solely from the nonjudicial foreclosure process, and there is no showing

26 as to how any of Defendants' actions were outside the scope of the ordinary foreclosure process.

27 Thus, Plaintiffs do not plead a proper Rosenthal Act claim. *See Reyes*, 2011 WL 30759, at *19.

28      Accordingly, the Rosenthal Act claim is DISMISSED WITH LEAVE TO AMEND.

United States District Court
Northern District of California

1

### J.       Truth in Lending Act

2      Under the Truth in Lending Act ("TILA"), creditors must provide borrowers with "clear

3 and accurate disclosures of terms dealing with things like finance charges, annual percentage rates

4 of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). The

5 statute of limitations for a damages claim under TILA is one year, and generally runs from the

6 date the loan documents are executed. 15 U.S.C. § 1640(e). *See Meyer v. Ameriquest Mortg. Co.*,

7 342 F.3d 899, 902 (9th Cir. 2003). Under the discovery rule, the limitations period does not begin

8 to run until the plaintiff discovers, or reasonably should discover, that she has been injured.

9 *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). In addition, a

10 statute of limitations may be equitably tolled if "despite all due diligence, a plaintiff is unable to

11 obtain vital information bearing on the existence of his claim." *Santa Maria v. Pacific Bell*, 202

12 F.3d 1170, 1178 (9th Cir. 2000). The Ninth Circuit disfavors granting motions to dismiss when

13 equitable tolling is at issue. *Supermail Cargo v. United States*, 68 F.3d 1204, 1206–07 (9th Cir.

14 1995).

15      Here, Plaintiffs allege various violations of TILA arising from the origination of Plaintiffs'

16 loan and the Assignment of DOT. *See* FAC ¶¶ 125–128, 130. Plaintiffs allege that the statute was

17 tolled because Defendants never effectively provided the required disclosures "regarding payment

18 schedules and terms and violations of prohibitions regarding high-rate, high-fee loans." *Id.* ¶ 129.

19      As to the loan origination, Bank of America and Recontrust argue that the claim is time-

20 barred by TILA's statute of limitations.[10] BOA Mot. at 18. They also point out that the originator

21 of the loan was Quality Home Loans, which is not a defendant in this action. *Id.* As to the

22 Assignment of DOT, Bank of America and Recontrust again argue that the claim is time-barred.

23 *Id.* They also argue that they are not subject to TILA because they are not the "new owner or

24 assignee" of the debt. *Id.*

25      The Court agrees with Bank of America and Recontrust. Insofar as the claim is based on

26

27

28

---

[10] Although the MERS Motion is "directed to the FAC in its entirety," it fails to specifically address the TILA claim. *See* MERS Mot. at 1.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    the Assignment, it cannot be applicable to any Defendant except Citibank, the "new owner or

2    assignee" of the debt. But the entire TILA claim fails because more than seven years have passed

3    since the loan was consummated in 2006, and more than two years have passed since the DOT

4    was assigned in 2011. *See* 15 U.S.C. § 1635(f). The claim is timely only if Plaintiffs can establish

5    that the statute of limitations was equitably tolled or did not begin to run at the time the loan was

6    originated. *See Lukovsky*, 535 F.3d at 1048; *Santa Maria*, 202 F.3d at 1178. Plaintiffs do not plead

7    facts to support the application of either doctrine.

8         The statute of limitations was not equitably tolled because there is no indication that

9    Plaintiffs were inhibited from discovering the nondisclosures that form the basis of the TILA

10   action or that Defendants tricked them into allowing the deadline to pass. *See King v. State of Cal.*,

11   784 F.2d 910, 915 (9th Cir. 1986); *Quach*, 2013 WL 3788827, at *3. Where nothing prevents a

12   plaintiff from making herself aware of TILA's statutory and regulatory requirements, a claim filed

13   after the deadline is not timely. *See Hubbard v. Fid. Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996). As

14   this Court has previously noted in another case brought by Plaintiffs' counsel, and as Bank of

15   America and Recontrust point out, a contrary result would render the one-year statute of

16   limitations meaningless because the existence of a violation would be sufficient to invoke tolling.

17   *See Bergman*, 2013 WL 5863057, at *25 (quoting *Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp.

18   2d 895, 906 (C.D. Cal. 2009)); BOA Reply at 12 n.4.

19        The Court finds that the TILA claim is premised on fundamental misunderstandings of the

20   law, and amendment would be futile. *See In re Vantive Corp.*, 283 F.3d at 1097. *See, e.g.*, *Quach*,

21   2013 WL 3788827, at *3 (dismissing with prejudice nearly identical TILA claim). Accordingly,

22   the TILA claim is DISMISSED WITH PREJUDICE.

23        **K.    Real Estate Settlement Procedures Act**

24        The Real Estate Settlement Procedures Act ("RESPA") provides guidelines for loan

25   servicers to follow when receiving a Qualified Written Request ("QWR") for information relating

26   to the servicing of a loan from a borrower, or from a borrower's agent. *See* 12 U.S.C. § 2605(e).

27   Upon receiving a QWR, the servicer must provide a written response acknowledging receipt of the

28   correspondence within twenty days, and provide a substantive response to the inquiry within sixty

26

1   days. *Id.* §§ 2605(e)(1)(A), (e)(2). A QWR is a written correspondence that "(i) includes, or

2   otherwise enables the servicer to identify, the name and account of the borrower, and (ii) includes

3   a statement of the reasons for the belief of the borrower, to the extent applicable, that the account

4   is in error or provides sufficient detail to the servicer regarding other information sought by the

5   borrower." 12 U.S.C. §§ 2605(e)(1)(B)(i), (ii).

6          Actual damages are available to compensate individual claims under RESPA, but

7   "[a]lleging a breach of RESPA duties alone is not enough. A plaintiff must, at a minimum, allege

8   that the breach resulted in actual damages." *Banh v. Aurora Loan Servs., LLC*, CV 11-06365 PSG,

9   2012 WL 2202982, at *3 (N.D. Cal. June 14, 2012) (citations omitted). "[U]ncertainty and

10  impending harm, as opposed to actual harm, is insufficient to state a claim for damages under

11  RESPA . . . ." *Id.* (citations omitted).

12         Here, Plaintiffs allege that they submitted a QWR to all Defendants requesting information

13  regarding Plaintiffs' loan and related indebtedness on November 13, 2013. FAC ¶ 136. Plaintiffs

14  allege that Defendants violated RESPA by failing to respond to the QWR. *Id.* ¶¶ 138–139.

15  Plaintiffs repeat allegations related to their broken chain of title theory. *Id.* ¶¶141–147. Plaintiffs

16  allege that they have been harmed by Defendants' failure to respond "because they are unsure of

17  which of these entities actually holds their Note and whether their payments have been properly

18  applied" and other damages, including damage to their credit and mental anguish. *Id.* ¶¶ 148–151.

19  Plaintiffs also allege that absent Defendants' "conceal[ment]" of the true owner of the loan,

20  Plaintiffs would have been credited for payments toward the purchase of the Property. *Id.* ¶ 143.

21         Bank of America and Recontrust argue that Plaintiffs have not alleged any facts to show

22  that they actually submitted a QWR under the statute.[11] BOA Mot. at 19. They also argue that

23  Plaintiffs have failed to allege that Bank of America and Recontrust are "servicers" for the

24  purposes of RESPA. *Id.* Further, they argue that Plaintiffs have failed to allege any pecuniary

25  harm. *Id.* at 19–20.

26

27

28

---

[11] Although the MERS Motion is "directed to the FAC in its entirety," it fails to specifically address the RESPA claim. *See* MERS Mot. at 1.

*United States District Court*
*Northern District of California*

The Court agrees with Defendants. Plaintiffs have not submitted a copy of the QWR, and do not allege any details about its contents, except that it "provide[d] the 'name and address of Note holder.'" *See* FAC ¶ 137. Importantly, Plaintiffs have not alleged that their QWR specified why they believed their account was in error, or what particular problems they had with the servicing of their loan. *See* 12 U.S.C. § 2605(e)(1)(B)(ii). Plaintiffs have not alleged plausibly that they actually sent a QWR.

Even assuming Plaintiffs sent a QWR, Plaintiffs do not make plausible allegations of damages as a result of Defendant's failure to respond. Instead, Plaintiffs vaguely allege that the lack of response resulted in uncertainty regarding which entities held their loan, damage to their reputation and credit, monetary damages, the impending foreclosure of their home, mental anguish, worries that they will lose their home, and late fees. *See* FAC ¶¶ 148–151. These assertions do not constitute plausible allegations of actual damages. Further, Plaintiffs do not allege how, in light of their default, they were damaged by making payments that were not "credited" to the correct entity. *See id.* ¶ 143. Plaintiffs allege no specific facts regarding such bills or payments, nor have they alleged any specific facts that their account was never credited. Moreover, even if the account "with the true beneficial interest holder" was never credited, Plaintiffs fail to allege that the amounts they paid were never credited to another account in their names or to their outstanding loan balance. Plaintiffs present no argument as to how they could have suffered actual injury if the payments were in fact credited against their loan balance. *See Bergman*, 2014 WL 265577, at *6 (rejecting similar argument in slander of title context).

In their Oppositions, Plaintiffs cite the "Property Securitization [sic] Report," which they allege "indicates that Citibank and [Bank of America] are in breach of thei[r] own [PSA] and in violation of IRS Code Sec. 860G []." Opp'n to BOA at 18. As noted above, Plaintiffs have not submitted a copy of this report for the Court's review, nor have Plaintiffs explained in any detail the bases for the report's purported findings. Thus, this citation does not support Plaintiffs' argument.

Plaintiffs also argue that "Defendant" violated RESPA "by failing the Housing and Urban Development's (HUD's) 1999 Statement of Policy two-part test for determining the legality of

1  lender payments to mortgage brokers for table funded transactions and intermediary transactions

2  under RESPA."[12] *Id.* Further, Plaintiffs argue that Defendants' violation of the PSA indicates a

3  violation of RESPA because of the "unconscionability of the transaction." *Id.* The Court rejects

4  these arguments. These RESPA claims are new to the Oppositions, and the Court need not address

5  them. Regardless, the claims are insufficient because they are conclusory, vague, and without

6  proper legal citation. For example, there is no factual information from which the Court can

7  ascertain which Defendants are alleged to have violated the HUD guidance, or which actions

8  caused these violations.

9      Accordingly, the RESPA claim is DISMISSED WITH LEAVE TO AMEND.

10  **VI.   CONCLUSION**

11      For the reasons stated above, Plaintiffs' FAC is DISMISSED in its entirety, with leave to

12  amend as described above. Any amended complaint shall be filed within thirty days of the date of

13  this Order.

14      **IT IS SO ORDERED.**

15  Dated: March 20, 2014

16  _____

17  JOSEPH C. SPERO
    United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27  [12] Plaintiffs appear to be referring to *Real Estate Settlement Procedures Act Statement of Policy 2001–1: Clarification of Statement of Policy 1999–1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning*

28  *Unearned Fees Under section 8(b)*, 66 Fed. Reg. 53,052 (Oct. 18, 2001), or a related document.