UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRICIA REYES-AGUILAR, et al., | Case No.  13-cv-05764-JCS |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS; DISMISSING SECOND AMENDED COMPLAINT; DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT** |
| BANK OF AMERICA, N.A, et al., | |
| Defendants. | |
| | Re: Dkt. Nos. 63, 66, 69 |

## I.  INTRODUCTION

Tricia Reyes-Aguilar and Edward Aguilar ("Plaintiffs") brought suit for wrongful foreclosure and related claims against Bank of America, N.A. ("Bank of America"), Citibank, N.A. ("Citibank"), Recontrust Company, N.A. ("Recontrust"), and Mortgage Electronic Registration Systems, Inc. ("MERS") (together, "Defendants"). Defendants moved to dismiss Plaintiffs' complaint. *See* Dkt. No. 7. Plaintiffs then filed their First Amended Complaint ("FAC") on January 15, 2014. *See* Dkt. No. 11. Defendants consequently withdrew their motions and filed new motions to dismiss the FAC. *See* Dkt. Nos. 16, 18. On March 20, 2014, the Court granted Defendants' motions and dismissed the complaint with leave to amend certain claims. *See* Dkt. No. 50; *Reyes-Aguilar v. Bank of Am.*, C-13-00741 JCS, 2014 WL 2153792 (N.D. Cal. Mar. 20, 2014). Plaintiffs timely filed a Second Amended Complaint ("SAC") on April 18, 2014 and added a new Defendant, Select Portfolio Servicing, Inc. ("SPS"). *See* Dkt. No. 58. On April 28, 2014, Plaintiffs moved for leave to file a Third Amended Complaint ("TAC"). *See* Dkt. Nos. 63–65. On May 2, 2014, Defendants filed motions to dismiss the SAC. *See* Dkt. Nos. 66, 69.

Presently before the Court are three motions: (1) Bank of America and Recontrust's

motion to dismiss the SAC ("BOA Motion"), (2) MERS, Citibank, and SPS's motion to dismiss the SAC ("MERS Motion") (together, "Motions to Dismiss"), and (3) Plaintiffs' motion for leave to file a TAC ("Motion to Amend"). All parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The Court finds this matter suitable for decision without oral argument. *See* Civ. L.R. 71(b). The hearing set for June 27, 2014 at 9:30 a.m. is VACATED. For the reasons stated below, the Motions to Dismiss are GRANTED, the Motion to Amend is DENIED, and the SAC is DISMISSED with prejudice.

## II.    BACKGROUND

On September 22, 2006, Plaintiffs entered into a Deed of Trust ("DOT") in connection with a loan for $461,500 secured by a single-family home located at 2180 Palm Place in Hayward, California ("Property"). *See* SAC ¶ 2; Defs.' Bank of America and Recontrust's Req. for Judicial Notice in Supp. of Defs.' Bank of America and Recontrust's Mot. to Dismiss ("BOA RJN"), Ex. A at 1, 3; Defs.' MERS and Citibank's Req. for Judicial Notice in Supp. of Defs.' MERS and Citibank's Mot. to Dismiss ("MERS RJN"), Ex. A at 1, 3.[1] The DOT identified Quality Home Loans as the lender, T.D. Service Company as the trustee, and MERS as the nominee for the lender and the lender's assigns. BOA RJN Ex. A at 1. The DOT was recorded in the Official Records of the Recorder of Alameda County, California on October 3, 2006.[2] *Id.*

Countrywide Home Loans Servicing, LP ("Countrywide") was initially the servicer to Plaintiffs' loan. SAC ¶ 12. On July 1, 2008, Bank of America purchased Countrywide and began servicing Plaintiffs' loan. *Id.* In February 2009, Plaintiffs entered into a loan modification agreement ("LMA") with Countrywide. SAC ¶ 14. The LMA resolved an unpaid $29,836.20 due under the note by adding it to the balance of the Plaintiffs' loan. *Id.* The LMA also reduced the Plaintiffs' interest rate to 5.5 percent resulting in a new monthly payment of $2,268.01, fixed for

---

[1] The Court takes judicial notice of the documents requested by Defendants as explained below. *See* Part III, *infra*. Because the BOA RJN and the MERS RJN request judicial notice of identical documents, the Court refers only to the BOA RJN for simplicity.

[2] All references to recordations herein refer to recordations with the Official Records of the Recorder of Alameda County, California.

one year through February 28, 2010. SAC ¶ 14. Plaintiffs' interest rate was to increase thereafter, subject to limitations and not to exceed a rate of 8 percent. *Id.* The LMA explicitly did not address changes to Plaintiffs' monthly escrow payment. *See id.* Ex. B at 5; BOA Mot. at 3. Plaintiffs contend that they made payments according to the LMA until May 2010 when the monthly payment amount increased to $4,420. SAC ¶ 15.

On August 5, 2011, MERS, acting as beneficiary under the DOT, recorded an Assignment of Deed of Trust ("ADOT"), assigning the DOT to Citibank as trustee for the certificate holders of CWABS, Inc. Asset-Backed Certificates, Series 2006-QH2 ("CWABS Trust"). *See Id.* ¶ 16, Ex. C; BOA Mot. at 3.

On April 4, 2012, Recontrust sent Plaintiffs a document titled "Debt Validation Notice," which named Bank of America as the creditor. *See* SAC ¶ 12, Ex. E.

On April 6, 2012, a Substitution of Trustee ("SOT") was recorded, and it substituted Recontrust as the trustee of the DOT in place of the original trustee, T.D. Service Company. *Id.* ¶ 19, Ex. F. It was executed on April 5, 2012 by a representative of Bank of America acting as attorney in fact for Citibank acting as trustee for the certificate holders of the CWABS Trust. BOA RJN Ex. C.

Also on April 6, 2012, a Notice of Default and Election to Sell Under Deed of Trust ("NOD") was recorded, and it stated that Plaintiffs owed $89,227.42 as of April 4, 2012. *See* BOA RJN, Ex. D. The NOD was executed on April 5, 2012 by Recontrust as an agent of the beneficiary of the DOT. BOA RJN, Ex. D at 2. The NOD stated that "[t]o find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason," Plaintiffs should contact Citibank as trustee for the certificate holders of the CWABS Trust. *Id.* The recorded NOD included a declaration of compliance with section 2923.5 of the California Civil Code, signed by a representative of Bank of America on March 9, 2012. *Id.* at 4.

On November 27, 2012, Bank of America provided Plaintiffs with a notice of change in servicer, indicating that effective December 16, 2012, SPS would be assuming all of Plaintiffs' loan servicing needs. *See* SAC ¶ 22, Ex. H; BOA Mot. at 3. Plaintiffs allege that this notice contradicted the April 4, 2012 Debt Validation Notice identifying Bank of America as the creditor,

3

1    and that "Defendants broke the chain of title by asserting competing claims of beneficial interest

2    without documenting the transfers to show the claims were . . . valid." SAC ¶ 22; BOA Mot. at 4.

3        On December 26, 2012, SPS sent Plaintiffs a notice in change of servicer titled Validation

4    of Debt Notice. *See* SAC ¶ 23, Ex. I. On February 1, 2013, SPS notified Plaintiffs that their loan

5    holder did not approve a loan modification under the Home Affordable Modification Program

6    ("HAMP") after calculating the loan modification's net present value ("NPV"). *Id.* ¶ 24, Ex. J.

7    Plaintiffs allege that they never applied for HAMP and that Defendants wrongfully calculated the

8    NPV of the modification because Defendants did not consider the foreclosure and used data that

9    was inaccurate. *Id.* On April 9, 2013, SPS notified Plaintiffs that they were potentially eligible for

10   the U.S. Treasury's Making Home Affordable Program ("MHA"). *Id.* ¶ 25, Ex. K.

11       On November 13, 2013, Plaintiffs allege that they sent a Qualified Written Request to

12   Bank of America, Citibank, Recontrust, and MERS. *Id.* ¶ 26, Ex. L. The document was not sent to

13   SPS, who was the loan servicer at the time. *See id.*

14       On October 28, 2013, a Second Notice of Trustee's Sale was recorded in the Alameda

15   County Recorder's Office by Recontrust, but the sale was subsequently cancelled on November

16   18, 2013. SAC ¶ 27. While a new sale has not yet been scheduled, Plaintiffs allege that an

17   impending trustee's sale is being initiated by parties with no lawful interest in the DOT. *Id.* ¶ 29.

18       On April 19, 2014, Plaintiffs filed this SAC against Defendants. *See* Dkt. No. 58. On April

19   28, 2014, Plaintiffs filed a motion for leave to file a TAC. *See* Dkt. No. 63. On May 2, 2014,

20   Defendants filed motions to dismiss the SAC.  *See* Dkt. Nos. 67, 69. On May 12 and 16, 2014,

21   Defendants filed oppositions to Plaintiffs' Motion to Amend. *See* Dkt. Nos. 71, 72.

22       The SAC alleges: (1) wrongful foreclosure; (2) violations of Cal. Civ. Code § 2923.5; (3)

23   violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"); (4)

24   violations of the Rosenthal Act, Cal. Civ. Code § 1788 ("Rosenthal Act"); (5) violations of

25   California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"); and (6)

26   violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 *et seq.* ("RESPA").

27   Defendants move to dismiss all claims asserted against them.

28

United States District Court
Northern District of California

4

United States District Court
Northern District of California

### III.   JUDICIAL NOTICE

The standard for judicial notice is set forth in Rule 201 of the Federal Rules of Evidence, which allows a court to take judicial notice of an adjudicative fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court" or it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. As a general rule, the court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). However, the court may consider unattached evidence on which the complaint "necessarily relies" if: "(1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the document." *Corinthian Colls.*, 655 F.3d at 999 (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). In addition, the court may take judicial notice of "matters of public record," but not facts that may be "subject to reasonable dispute." *Corinthian Colls.*, 655 F.3d at 999 (citing *Lee*, 250 F.3d at 689).

In support of their Motions to Dismiss, Bank of America and Recontrust request judicial notice of four publicly recorded documents: the DOT, Assignment of DOT, SOT, and NOD. *See* BOA RJN; MERS RJN. Plaintiffs do not object to judicial notice of the documents themselves as public records. However, Plaintiffs object to judicial notice of any factual matters contained therein. Pls.' Obj. to BOA RJN at 2; Pls.' Obj. to MERS RJN at 2.

Judicial notice of the existence and content of these documents, but not the truth of any facts stated therein, is proper under Federal Rule of Evidence 201(b) because the authenticity of the documents is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See Zapata v. Wells Fargo Bank, N.A.*, C 13-04288 WHA, 2013 WL 6491377, at *5 (N.D. Cal. Dec. 10, 2013) (citing *Castillo v. Wachovia Mortg.*, No. 12-0101 EMC, 2012 WL 1213296, at *1 n.2 (N.D. Cal. Apr. 11, 2012)).

In support of their oppositions to Plaintiffs' Motion to Amend, Defendants request judicial notice of three documents from a previous lawsuit ("Previous Lawsuit") of the same subject matter that Plaintiffs brought against Defendants: the Notice of Removal from state court to this Court

5

based on diversity jurisdiction, the order granting Defendants' motion to dismiss Previous Lawsuit, and the notice of Plaintiffs' voluntary dismissal of Previous Lawsuit. Defs. Bank of America and Recontrust's Req. for Judicial Notice in Supp. of Opp'n to Mot. to Amend. Plaintiffs do not object to judicial notice of these documents.

Courts may take notice of proceedings in other courts "if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citing *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)). Here, the court takes judicial notice of the documents from the Previous Lawsuit as matters of public record in related litigation. *See Headwaters Inc. v. United States Forest Service*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) (courts may take judicial notice of the docket in related cases as materials from a proceeding in another tribunal are appropriate for judicial notice)).

## IV.    LEGAL STANDARD

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star. Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). In ruling on a motion to dismiss under Rule 12(b)(6), the Court takes "all allegations of material fact as true and construe(s) them in the lights most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1990). The complaint need not contain "detailed factual allegations," but must allege facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)). However, "[l]eave to amend need not be granted when an amendment would be futile." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097 (9th Cir. 2002).

**V.     ANALYSIS**

      **A.     Defendants' Motions to Dismiss SAC**

            **1.     Wrongful Foreclosure**

In California, a claim for wrongful foreclosure has the following elements: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 104 (2011).

Plaintiffs allege that the as-of-yet unscheduled foreclosure sale is illegal, fraudulent, or oppressive based on several theories. First, Plaintiffs allege that the DOT's chain of title was broken as follows: Countrywide had servicing rights to the loan, which were acquired when Bank of America purchased Countrywide in 2008. *See* SAC ¶ 36. Bank of America later asserted its rights not as a servicer, but as a beneficiary to the DOT, when it was identified as the "creditor" in the April 4, 2012 Debt Validation Notice. *See id.*; Ex. E. Thus, there were competing beneficiaries to the DOT—Bank of America versus MERS as agent for Quality Home Loans—which rendered invalid the ADOT assigning the DOT from MERS to Citibank as trustee for the certificate holders of the CWABS Trust. *Id.*

Second, Plaintiffs contest the stated amount owed in the Notice of Default of $89,227.42. *Id.* ¶ 43. Plaintiffs allege that they properly paid $2,422.65 per month in accordance with the LMA, and that the monthly increase to $4,420 in May 2010 was unexpected and unlawful. *See id* ¶¶ 44–48. Plaintiffs allege that the misstatement of the amount owed initiated a wrongful foreclosure and deprived Plaintiffs of their right of redemption under section 2903 of the California Civil Code. *Id.* ¶ 49.

Third, Plaintiffs assert that various notices violated section 2923.5 of the California Civil Code and RESPA because of procedural errors and robo-signing. Specifically, Plaintiffs allege that when the servicer was changed from Bank of America to SPS in 2012, the notice was invalid

because it was ambiguous and contained two effective dates for the change. *Id.* ¶ 38, Ex. H. Plaintiffs also allege that SPS's Validation of Debt Notice sent on December 26, 2012 is invalid because it was untimely, ambiguous, and did not include the name and address of the new loan servicer. *See id.* ¶¶ 38–41, Ex. I. To support Plaintiffs' claim of robo-signing, Plaintiffs present the testimony of former Recontrust employee Tina Sevillano ("Sevillano"). *Id.* ¶ 50; Ex. M. Sevillano declares that while working for Recontrust she routinely signed documents on behalf of companies, including Bank of America and MERS, with little or no knowledge of the documents' veracity or contents. *See id.* In the instant case, Martha Casillas ("Casillas"), not Sevillano, is the signing Recontrust representative on the NOD, but Plaintiffs contend that Sevillano's testimony demonstrates the predicate acts of fraud by Recontrust to sufficiently support Plaintiffs' robo-signing claims. *Id.*

As to prejudice, Plaintiffs allege that allowing the foreclosure to go forward "would cause Plaintiffs to wrongfully lose their property," and monetary damages would be inadequate compensation because land is unique. *Id.* ¶ 52. Plaintiffs allege damages in the loss of opportunity to pursue alternate measures to avoid foreclosure like bankruptcy, refinancing or selling the Property. *Id.* ¶ 53. Plaintiffs allege pecuniary damages as a result of the alleged improper recordings of the NOD and NOTS, and the ensuing negative effect upon the purchase price and vendability of the Property. *Id.* Plaintiffs further allege that Defendants' deficient notifications caused Plaintiffs uncertainty as to whom they owed mortgage payments and, thus, Defendants' payment demands do not form the basis of proper foreclosure. *Id.* ¶ 42. Plaintiffs claim that they are excused from tendering the amount due because they have shown sufficient facts to demonstrate that the foreclosure sale is void. *Id.* ¶ 55. Plaintiffs also claim that they are entitled to recover attorneys' fees and costs incurred in bringing this suit. *Id.* ¶ 56.

Bank of America and Recontrust argue that Plaintiffs' wrongful foreclosure claim was rendered moot once the foreclosure proceedings were cancelled on November 18, 2013. BOA Mot. at 7. *See* SAC ¶ 27; *Tamburri v. Suntrust Mort., Inc.*, 11-CV-02899-JST, 2013 WL 4528447, at *6 (N.D. Cal. Aug. 26, 2013) (wrongful foreclosure claims failed where foreclosure sale had not taken place nor was scheduled to take place). Bank of America and Recontrust also argue that

Citibank validly obtained the beneficial interest in the DOT through the ADOT, and thus was the proper party to initiate proceedings. BOA Mot. at 8. Defendants argue that Plaintiffs do not present facts to support the conclusory allegations that documents produced by Defendants are invalid on the grounds of robo-signing. BOA Mot. at 8; MERS Mot. at 5. Bank of America and Recontrust argue that Plaintiffs fail to allege damages because fail to allege that they are not in default. BOA Mot. at 9; SAC ¶ 51.

The Court generally agrees with Defendants. The trustee's sale has been canceled and no other sale is scheduled, rendering the claim moot. *See Tamburri*, 2013 WL 4528447, at *5 (plaintiff's wrongful foreclosure claim mooted by cancellation of foreclosure sale) (collecting cases). Even if the claim were not moot, all of Plaintiffs' theories fail for failure to allege damages. Plaintiffs do not show that they did not default on their loan obligations, or that they would not have been foreclosed upon regardless of the alleged deficiencies in the foreclosure process and related communications. *See Natividad v. Wells Fargo Bank, N.A.*, 3:12-CV-03646 JSC, 2013 WL 2299601, at *16 (N.D. Cal. May 24, 2013) (quoting *Albano v. Cal-W. Reconveyance Corp.*, No. 4:12-cv-4018 KAW, 2012 WL 5389922, at *6 (N.D. Cal. Nov. 5, 2012)) ("The prejudice or harm element is met only if a plaintiff demonstrates that the foreclosure would have been averted but for the alleged deficiencies."); *Christiansen v. Wells Fargo Bank*, No. C 12-02526 DMR, 2012 WL 4716977, at *7 (N.D. Cal. Oct. 1, 2012) (quoting *Ghuman v. Wells Fargo Bank, N.A.*, No. 1:12-cv-00902-AWI-BAM, 2012 WL 2263276, at *5 (N.D. Cal. June 15, 2012)) ("Plaintiffs would be hard pressed to show any conceivable prejudice, given Plaintiffs have offered no facts to suggest the substitution of [trustee] (or the allegedly improper recording thereof) adversely affected their ability to pay their debt or cure their default."). Similarly, as to the allegedly overstated amount due on the NOD caused by a violation of the terms of the LMA, Plaintiffs fail to allege that they could have actually paid enough to become current on the loan or to exercise any right of redemption.

Further, the broken chain of title theory based on the identification of Bank of America as a "creditor" on the April 4, 2012 Debt Validation Notice fails. As Bank of America and Recontrust point out, this nomenclature is "unremarkable" because Bank of America was in fact the servicer

United States District Court
Northern District of California

for the loan at that time, and the entity to which Plaintiffs were to send payments. *See* BOA Mot. at 6. On the date of the notice, the beneficiary of the DOT was MERS as agent for Quality Home Loans and, as of April 6, 2012, the beneficiary was Citibank as trustee for the certificate holders of the CWABS Trust. *See* BOA RJN Ex. C. Moreover, Plaintiffs do not present any legal authority for their argument that this alleged conflict causes a break in the chain of title.

Additionally, Plaintiffs' robo-signing theory fails to show adequate facts to support the allegation that Casillas robo-signed the NOD for Recontrust. Courts have "consistently refused to find that a plaintiff can state a claim on the basis of a conclusory allegation of robo-signing, absent some factual support." *See Baldoza v. Bank of Am., N.A.*, C-12-05966 JCS, 2013 WL 978268 (N.D. Cal. Mar. 12, 2013), at *13. The declaration of Sevillano, a former Recontrust employee who has nothing to do with this case, does not elevate the robo-signing claim to plausibility. This testimony does not provide facts that specifically refer to Plaintiffs' loan or to the acting Recontrust representative, and they are insufficient to allege fraud under Rule 9(b).[3]

Because no foreclosure sale is scheduled, and because Plaintiffs fail to establish an illegal sale or pecuniary damages, Plaintiffs fail to state a claim for wrongful foreclosure. The Court does not address the tender rule. Because Plaintiffs have had leave to amend and still do not show sufficient facts to state a claim, the wrongful foreclosure claim is DISMISSED WITH PREJUDICE.

### 2.    Violation of Cal. Civ. Code § 2923.5

Plaintiffs allege that Defendants failed to try with due diligence to contact them in violation of section 2923.5 of the California Civil Code. SAC ¶ 60. Plaintiffs reallege theories of robo-signing, break in the chain of title, and intentional misstatement of amount owed to argue

---

[3] In their oppositions, Plaintiffs assert for the first time that "the foreclosure should be denied" under the dual tracking provisions of California's Homeowner Bill of Rights ("HBOR"), Cal. Civ. Code § 2923.6, because Plaintiffs submitted a loan modification application on March 25, 2014. *See* Pls.' Opp'n to BOA Mot. at 8 ("Opp'n to BOA"); Pls.' Opp'n to MERS Mot. at 8 ("Opp'n to MERS"). The Court dismisses this claim because it was not raised in the SAC. Moreover, it cannot save Plaintiffs' wrongful foreclosure claim, which fails for failure to allege plausibly damages.

that the Declaration of Compliance attached to the NOD recorded April 6, 2012 is invalid, and thus does not demonstrate due diligence by Defendants. *Id.* Plaintiffs also challenge Defendants' due diligence attempts to contact Plaintiffs on the grounds that all of Defendants' communications "at this point in time . . . had been derailed" due to statutory violations and lack of required notices pertaining to the change in servicer and the beneficial interest holder, the increase in Plaintiffs' interest rate, and the initiation of foreclosure. *Id.* Plaintiffs also allege that Bank of America's communication dated January 27, 2012 does not satisfy due diligence under section 2923.5 because Bank of America did not send the required subsequent certified letter with return receipt requested. *Id.* ¶ 62.

Bank of America and Recontrust argue that because there is no pending foreclosure sale of Plaintiffs' property, the only relief provided under section 2923.5—*i.e.*, postponing foreclosure— is not available, and the section 2923.5 action must be dismissed for failure to state claim. BOA Mot. at 9; MERS Mot. at 9 (citing *Mabry v. Sup. Court*, 185 Cal. App. 4th 208, 223–35 (2010)). Further, the purpose of the statutory requirement is "to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." *See* Cal. Civ. Code § 2923.5(a)(2). MERS, Citibank, and SPS point out that Plaintiffs were in fact reviewed for a loan modification and received one. MERS Mot. at 6 (citing SAC ¶¶ 14, 15, 24).

The Court agrees with Defendants. At the time the NOD was recorded on April 6, 2012, the only remedy available for a violation of section 2923.5 was postponement of the foreclosure sale.[4] Because the foreclosure sale of Plaintiffs' property has been cancelled, postponement is not available. Therefore, Plaintiffs do not state a claim for which relief can be granted.

Further, Plaintiffs raise arguments regarding robo-signing, break in the chain of title, and deficient communications to dispute the validity of the Declaration of Compliance, but these

_____

[4] Effective January 1, 2013, the HBOR modified various sections of the California Civil Code related to foreclosure. In accordance with accepted legal principles in California against retroactivity, this Court has held that HBOR provisions do not apply unless the alleged conduct took place after the effective date. *See Rockridge Trust v. Wells Fargo, N.A.*, C-13-01457 JCS, 2013 WL 5428722, at *28 (N.D. Cal. Sept. 25, 2013). Here, the NOD was recorded on April 6, 2012. BOA RJN Ex. D.

1    arguments fail for the same reasons that each argument fails independently. *See* Part V.A.1.,

2    *supra*. Additionally, Plaintiffs' claims under the FDCPA, the Rosenthal Act, the UCL, and

3    RESPA fail, and they cannot be used to contend that Defendants did not attempt with due

4    diligence to contact Plaintiffs in compliance with section 2923.5. *See* Parts V.A.3.–6., *infra*.

5         Accordingly, the section 2923.5 claim is DISMISSED WITH PREJUDICE because

6    Plaintiffs have had leave to amend and still do not allege facts to state a claim.

### 3.    Violation of the Fair Debt Collection Practices Act

8         The FDCPA provides that a "debt collector may not use any false, deceptive, or misleading

9    representation or means in connection with the collection of any debt" and that a "debt collector

10   may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C.

11   §§ 1692e, 1692f. FDCPA claims have a statute of limitations of one year from the date on which

12   the violation occurred. 15 U.S.C. § 1692k(d). The FDCPA defines the term "debt collector" to

13   include: (1) "any person who uses any instrumentality of interstate commerce or the mails in any

14   business the principal purpose of which is the collection of any debts," and (2) any person "who

15   regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

16   owed or due to another." *Id.* § 1692a(6). In order to adequately plead this claim, a plaintiff must

17   allege specific facts showing that a defendant is a "debt collector" within the meaning of the

18   statute. *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208 (9th Cir. 2013).

19        As to the definition of "debt collection," the Court agrees with other courts in this Circuit

20   which have held that non-judicial foreclosure is generally not "debt collection." *See Natividad*,

21   2013 WL 2299601, at *5–*9; *Ligon v. JP Morgan Chase Bank*, No. C 11-2504 MEJ, 2011 WL

22   2550836, at *3 (N.D. Cal. June 27, 2011) (collecting cases). The Court adopts Judge Corley's

23   holding that "legally-mandated actions required for mortgage foreclosure are not necessarily debt

24   collection," and that a plaintiff alleging a proper FDCPA claim must allege that the defendant

25   "engaged in any action beyond statutorily mandated actions for non-judicial foreclosure." *See*

26   *Natividad*, 2013 WL 2299601, at *9.

27        As in their FAC, Plaintiffs maintain that Defendants are debt collectors within the meaning

28   of the FDCPA and that they violated the FDCPA by failing to provide the FDCPA "Mini-Miranda

United States District Court
Northern District of California

12

1    Warning," *i.e.*, a notice that they are "debt collectors" and attempting to collect on a debt, pursuant

2    to the NOD, which was recorded on April 6, 2012. SAC ¶¶ 74–77, 79. Plaintiffs also allege that

3    the Defendants engage in debt collection under the FDCPA because of their involvement in the

4    loan modification process:

> [Bank of America] or its purported predecessor in interest or robo-
> signers employed by Citibank, are responsible for Exhibits B
> [February 18, 2009 LMA] and D [January 27, 2012 HAMP denial
> letter]. Recontrust or robosigners employed by Citibank are
> responsible for Exhibit[] E [April 4, 2012 Debt Validation Notice].
> Recontrust and [Bank of America] or robosigners employed by
> Citibank are also responsible for the NOD which Plaintiffs allege is
> also subject to the Rosenthal Act. SPS is responsible for Exhibits I
> [December 26, 2012 Validation of Debt Notice], J [February 1, 2013
> HAMP denial letter] and K [April 9, 2013 response to loan
> modification inquiry].

12   SAC ¶ 74. Plaintiffs allege that they have suffered damages including a loss of equity and

13   diminution in value of the Subject Property as a direct and proximate result of Defendants' actions

14   and, thus, seek an injunction. *Id.* ¶ 81. Plaintiffs allege that the purported "falsely recorded

15   documents and improperly noticed transfers" have resulted in pecuniary damages because they

16   demonstrate a false claim of right resulting in factors which "negatively . . . affect the purchase

17   price and vendability of the Subject Property." *Id.* ¶ 82. Plaintiffs further allege the right to recover

18   attorneys' fees and costs incurred in pursuing this action. *Id.* ¶ 83.

19        Defendants argue that the FDCPA claim fails because Plaintiffs fail to show that

20   Defendants are "debt collectors" or that they engaged in "debt collection activity." *See* BOA Mot.

21   at 11–12; MERS Mot. at 8–9. Defendants argue that Plaintiffs' allegations constitute nothing more

22   than foreclosure on a property based on a deed of trust, and thus do not constitute a "debt

23   collection" activity within the scope of the FDCPA. *See* BOA Mot. at 11–12; MERS Mot. at 8–9.

24        The Court agrees with Defendants. Plaintiffs fail to present facts showing that Defendants

25   are debt collectors or that they engaged in debt collection activities. First, the FDCPA does not

26   apply to nonjudicial foreclosure—foreclosing on a property pursuant to a DOT is not "collection

27   of a debt" within the meaning of the FDCPA. *See Arostegui v. Bank of Am.*, C 13-6009 PJH, 2014

28   WL 1230762, at *6 (N.D. Cal. Mar. 21, 2014) (quoting *Izenberg v. ETS Servs., LLC*, 589 F. Supp.

United States District Court
Northern District of California

13

2d 1193, 1199 (C.D. Cal. 2008; *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002)). As in the FAC, Plaintiffs fail to allege facts to show that Defendants took any actions beyond the foreclosure process.

Second, Plaintiffs argue that various recorded and non-recorded documents pertaining to Plaintiffs' LMA demonstrate that Defendants took part in loan modification activities that constitute debt collection. *Id.* ¶ 74, Exs. B, D, E, I, J, K. However, "[t]he FDCPA does not apply to . . . loan modifications, as such activity is 'more debt servicing than debt collection.'" *Arostegui*, 2014 WL 1230762, at *6 (quoting *Schlegel v. Wells Fargo Bank, N.A.*, 799 F. Supp. 2d 1100, 1104–06 (N.D. Cal. 2011)).

Thus, Bank of America and SPS acted as servicers that engaged in loan modification activities, Recontrust acted as a trustee of the DOT that recorded the NOD as part of the foreclosure process, and Citibank acted as a beneficiary to the DOT that is the creditor of the loan. These entities are not debt collectors nor did they engage in debt collection under the FDCPA.

Further, Plaintiffs' allegations that certain loan related communications and documents were void because they were executed by robo-signers are unpersuasive for the reasons explained in the wrongful foreclosure context. *See* Part V.A.1., *supra*.

Accordingly, because Plaintiffs already had leave to amend and still fail to establish essential elements of the claim, the FDCPA claim is DISMISSED WITH PREJUDICE.

### 4.    Violation of the Rosenthal Act

The Rosenthal Act is intended "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1. In addition to setting forth its own standards governing debt-collection practices, the Rosenthal Act also provides that, with limited exceptions, "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of" the FDCPA. *Id.* § 1788.17.

Under the Rosenthal Act, a "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." *Id.* § 1788.2(c). "[T]he definition of 'debt collector' is broader under the Rosenthal Act than it is

14

under the FDCPA, as the latter excludes creditors collecting on their own debts." *Reyes v. Wells Fargo Bank, N.A.*, C-10-01667 JCS, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011). "Thus, a mortgage servicer may be a 'debt collector' under the Rosenthal Act even if it is the original lender, whereas, such an entity would be excluded from the definition of debt collector under the federal act." *Id.* (citing *Herrera v. LCS Fin. Servs. Corp.*, C09-02843 TEH, 2009 WL 5062192, at *2 (N.D. Cal. Dec. 22, 2009)).

Here, Plaintiffs allege that various communications from Defendants, including the NOD and communications pertaining to the LMA, establish that Defendants each regularly engage in debt collection, and thus, Defendants are "debt collectors" under section 1788.2(c) of the California Civil Code. *See* SAC ¶ 67, Exs. B, D, E, I, J, K. Plaintiffs allege that these notices are invalid because of robo-signing. *Id.* ¶ 67. Further, Plaintiffs allege that Defendants did not have any basis to record the NOD, made collection demands based on increases to Plaintiffs' interest rate in excess of that permitted by the note and LMA, and attempted to disguise debt collection fees as interest. *Id.* ¶ 68. Plaintiffs assert that these actions constituted "collecting or attempting to collect a debt collector's fee or charge that was not permitted by law" in violation of section 1788.14(b). *Id.* Plaintiffs allege that Defendants also violated section 1788.17(b) by violating several FDCPA provisions. *Id.* ¶ 69.

Plaintiffs allege that Defendants' violations of the Rosenthal Act caused monetary losses, forfeiture of opportunity to pursue alternate measures to avoid foreclosure, impairment of vendability of the property, and pecuniary damages from wrongful recordings. *Id.* ¶ 70. Plaintiffs further allege that Defendants wrongfully collected and profited from Plaintiffs' monthly mortgage payments and "perform[ed] servicing and foreclosure activities without the legal capacity to do so." *Id.* ¶ 71. Additionally, Plaintiffs allege that they are entitled to recover attorneys' fees and costs incurred in bringing this action. *Id.* ¶ 72.

Defendants argue that this claim fails because Plaintiffs do not present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." BOA Mot. at 10; MERS Mot. at 7. Defendants reassert that Plaintiffs do not establish that Defendants are "debt collectors" under the Rosenthal Act and that courts have routinely held

that mortgage servicing companies are not debt collectors under the Rosenthal Act. BOA Mot. at 10; MERS Mot. at 7. *See Caballero v. Ocwen Loan Serv.*, No. C-09-01021 RMW, 2009 WL 1528128, at *1 (N.D. Cal May 29, 2009) (loan servicer was not "debt collector" under FDCPA). Defendants argue that Plaintiffs only make allegations within the scope of the non-judicial foreclosure process, and thus they do not show that Defendants engaged in "debt collection" activity. BOA Mot. at 10. As to Plaintiffs' allegations that the May 2010 change in monthly payments were debt collection fees "disguised" as interest, Bank of America and Recontrust argue that this argument fails because the increase was permitted by the terms of the LMA. *see* BOA Mot. at 3; Ex. B at 6. Under the LMA, a monthly payment increase was allowed if the escrow payment changed, and Defendants assert that Plaintiffs' negative escrow balance of nearly $20,000 at the time of the change. BOA Mot. at 3. *See* SAC, Ex. I at 1.

The Court generally agrees with Defendants. Plaintiffs' claim under the Rosenthal Act fails for the same reasons that the FDCPA claim fails. Although the Rosenthal Act's definition of "debt collector" is broader than that under the FDCPA, it is only broader in a limited respect: the FDCPA's definition excludes creditors collecting on their own debts. *See Reyes*, 2011 WL 30759, at *19. In other respects, the definitions are basically identical. Here, the difference between the Rosenthal Act and FDCPA is immaterial because the creditor—Citibank as trustee for the certificate holders of the CWABS Trust—is not the servicer.

Here, as with the FDCPA claim, Plaintiffs fail to show that any of Defendants' actions went beyond the normal foreclosure process. *See* Part V.A.4., *supra*. *Cf. Walters v. Fidelity Mort. of Ca., Inc.*, No. S-09-3317 FCD/KJM, 2010 WL 3069341, at *1203 (E.D. Cal. Aug. 4, 2010) (allegations that mortgage servicer informed credit agencies that plaintiff had defaulted on loan and placed telephone calls seeking financial information about plaintiff without disclosing identity of the caller constituted a pattern of improper conduct to implicate the Rosenthal Act). Additionally, loan modification is not a debt collection activity because it is "more debt servicing than debt collection." *See Schlegel*, 799 F. Supp. 2d at 1104–06.

Plaintiffs' allegations appear to arise from the loan modification process, which is not debt collection, and ordinary non-judicial foreclosure proceedings. Because Plaintiffs have already

16

been given leave to amend and still failed to cure the claim's deficiencies, the Rosenthal Act claim is accordingly DISMISSED WITH PREJUDICE.

### 5.      Violation of the California Unfair Business Practices Act

California's UCL prohibits "unfair competition," defined as any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. A claim may be brought under the UCL "by a person who has suffered injury in fact and has lost money or property as a result of unfair competition." *Id.* § 17204. Therefore, to establish standing under the UCL, a plaintiff must "(1) establish a loss or deprivation of money sufficient to qualify as injury in fact, *i.e.*, economic injury, and (2) show that the economic injury was the result of, *i.e.*, caused by, the unfair business practice . . . that is the gravamen of the claim." *Lawther v. OneWest Bank, FSB*, No. C-10-00054 JCS, 2012 WL 298110, at *23 (N.D. Cal. Feb. 1, 2012) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011)) (emphasis in original).

Plaintiffs again allege that Defendants violated the UCL by executing the "false" Assignment of DOT and recording the NOD, "knowing that it did not hold the beneficial interest in the [DOT], and thus lacked the legal power to initiate a foreclosure." SAC ¶¶ 86–88. Plaintiffs again argue they have suffered injury because "a cloud has been placed on [their] title and their interest in the Subject Property has been placed in jeopardy" as a result of the Defendants' actions. SAC ¶ 90.

Defendants maintain that Plaintiffs failed to allege injury and, as a result, they lack standing to pursue the claim. BOA Mot. at 12; MERS Mot. at 10. Defendants also argue that this claim should be dismissed because the UCL is a derivative cause of action and Plaintiffs have not properly pled any other claims. BOA Mot. at 13; MERS Mot. at 10–11.

The Court agrees with Defendants. Plaintiffs did not amend their allegations with facts to show Defendants' practices directly caused economic injury and, thus, they lack standing under the UCL. Further, because the SAC did not cure the inadequacies resulting in dismissal of the FAC, the Court by this Order dismisses all of Plaintiffs' claims. Accordingly, Plaintiffs' UCL claim is DISMISSED WITH PREJUDICE.

///

United States District Court
Northern District of California

17

### 6.     Violation of the Real Estate Settlement Procedures Act

RESPA provides guidelines for loan servicers to follow when receiving a Qualified Written Request ("QWR") for information relating to the servicing of a loan from a borrower, or from a borrower's agent. *See* 12 U.S.C. § 2605(e). Upon receiving a QWR, the servicer must provide a written response acknowledging receipt of the correspondence within twenty days, and provide a substantive response to the inquiry within sixty days. *Id.* §§ 2605(e)(1)(A), (e)(2). A QWR is a written correspondence that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower, and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* §§ 2605(e)(1)(B)(i), (ii).

Actual damages are available to compensate individual claims under RESPA, but "[a]lleging a breach of RESPA duties alone is not enough. A plaintiff must, at a minimum, allege that the breach resulted in actual damages." *Banh v. Aurora Loan Servs., LLC*, CV 11-06365 PSG, 2012 WL 2202982, at *3 (N.D. Cal. June 14, 2012) (citations omitted). "[U]ncertainty and impending harm, as opposed to actual harm, is insufficient to state a claim for damages under RESPA . . . ." *Id.* (citations omitted).

In their SAC, Plaintiffs provided the alleged QWR that they mailed to Bank of America, Citibank, Recontrust, and MERS on November 13, 2013 requesting information regarding Plaintiffs' loan and related indebtedness. SAC ¶ 93, Ex. L. Plaintiffs maintain that Defendants violated RESPA by failing to respond to the QWR. *Id.* ¶¶ 95–96. Plaintiffs expand allegations related to their broken chain of title theory based in the allegedly improper assignment of the DOT under the PSA. *Id.* ¶¶ 102–105. In their oppositions, Plaintiffs allege for the first time that Defendants violated RESPA by participating in improper "table funded transactions and intermediary transactions." *See* Opp'n to BOA at 14–15; Opp'n to MERS at 14–15. Plaintiffs repeat that they have been harmed by Defendants' failure to respond "because they are unsure of which of these entities actually holds their Note and whether their payments have been properly applied" and other damages, including damage to their credit and mental anguish. *Id.* ¶¶ 106–108. Plaintiffs also allege that absent Defendants' "conceal[ment]" of the true owner of the loan,

18

1    Plaintiffs would have been credited for payments toward the purchase of the Property. *Id.* ¶ 103.

2         Defendants argue that they did not violate RESPA by failing to respond to Plaintiffs'

3    alleged QWR because the Defendants who received the QWR were not Plaintiffs' loan servicers,

4    and thus were not required to respond. BOA Mot. at 14, MERS Mot. at 11–12. MERS, Citibank,

5    and SPS also contend that the Plaintiffs' alleged QWR did not relate to "servicing" as defined by

6    RESPA, and thus does not qualify as a QWR at all. MERS Mot. at 12. Defendants argue that the

7    allegations regarding "table funded transactions" are improper because they were not raised in the

8    SAC. Defs. Bank of America and Reontrust's Reply to Opp'n at 8 ("BOA Reply"); Defs. MERS,

9    Citibank, and SMS's Reply to Opp'n at 6–7 ("MERS Reply"). Bank of America and Recontrust

10   reassert that Plaintiffs fail to present facts to show they incurred any "pecuniary damages," let

11   alone damages caused by any alleged RESPA violations. BOA Mot. at 14.

12        The Court agrees with Defendants. The servicing of Plaintiffs' loan was transferred from

13   Bank of America to SPS on December 16, 2012, nearly a year before Plaintiffs mailed their

14   alleged QWR on November 13, 2013, yet SPS was not a recipient of the document. MERS Mot. at

15   11–12; SAC Ex. L. SPS directly communicated with Plaintiffs on December 26, 2012, identifying

16   itself as the "servicer for [Plaintiffs'] mortgage loan" and specifying its responsibilities in that

17   role. *See id.* Ex. D. Thus, Plaintiffs knew or should have known at the time of mailing their alleged

18   QWR on November 13, 2013 that SPS was their mortgage servicer. Plaintiffs do not explain why

19   they did not acknowledge SPS as their mortgage servicer when they mailed their alleged QWR.

20   *See id.* Ex. L. Plaintiffs' contention that Bank of America's notice of this transfer is "too

21   ambiguous [to] constitute proper notice on grounds of uncertainty" because it refers to both

22   December 16, 2012 and January 1, 2013 as effective dates of change is unconvincing. *See id.* Ex.

23   H at 12. Accordingly, SPS is not in violation of RESPA for failure to respond because it never

24   received the alleged QWR, and the remaining Defendants who did receive Plaintiffs' QWR were

25   not in violation of RESPA for failure to respond because they were not required to do so. *See* 12

26   U.S.C. § 2605(e) (provision applies to "loan servicer[s]").

27        Even if Plaintiffs had addressed their alleged QWR to the proper party, they have not

28   asserted why they believed their account was in error, or what particular problems they had with

19

the servicing of their loan. *See* 12 U.S.C. § 2605(e)(1)(B)(ii). To the extent that Plaintiffs' grievances are discernable, they appear to be based in the same broken chain of title theory that this Court has already dismissed with prejudice. *See Reyes-Aguilar*, 2014 WL 2153792, at *4–*5 (dismissing with prejudice all claims based on theory that chain of title was broken because of alleged late assignment of DOT in violation of PSA).

Furthermore, Plaintiffs do not make plausible allegations of damages as a result of Defendant's failure to respond. Instead, Plaintiffs vaguely allege that the lack of response resulted in uncertainty regarding which entities held their loan, damage to their reputation and credit, monetary damages, the impending foreclosure of their home, mental anguish, worries that they will lose their home, and late fees. *See* SAC ¶¶ 106–108. While claims of harm to credit and monetary damages can constitute plausible allegations of actual damages under RESPA, Plaintiffs fail to present facts to infer that they actually suffered such damages as a result of Defendants' actions. *Cf. Hutchins v. Bank of Am., N.A.*, 13-CV-03242-JCS, 2014 WL 722098, at *9 (N.D. Cal. Feb. 25, 2014) (reports submitted by a mortgage servicer resulted in lowering of plaintiff's credit score contributing to loss of job sufficiently pled 'actual damages' under RESPA to survive a motion to dismiss).

Additionally, Plaintiffs do not allege how, in light of their default, they were damaged by making payments that were not "credited" to the correct entity. *See id.* ¶ 103. While Plaintiffs present facts regarding payment amounts resulting from the effects of the LMA, they do not allege any specific facts that their account was never credited. Moreover, even if the account "with the true beneficial interest holder" was never credited, Plaintiffs fail to allege that the amounts they paid were never credited to another account in their names or to their outstanding loan balance. Plaintiffs present no argument as to how they could have suffered actual injury if the payments were in fact credited against their loan balance. *See Bergman*, 2014 WL 265577, at *6 (rejecting similar argument in slander of title context).

Finally, Plaintiffs allegations regarding improper "table funded transactions and intermediary transactions" are waived because they were not raised in the SAC. Even if they not waived, Plaintiffs claim is conclusory and not supported by any factual allegations.

20

1    Plaintiffs knew or should have known that SPS was their mortgage servicer when they sent

2    the alleged QWRs, and that any QWR should have been sent to SPS. Furthermore, Plaintiffs fail to

3    show facts to support allegations that Defendants' actions resulted in actual damages to Plaintiffs'

4    credit to sustain a claim. Accordingly, the RESPA claim is DISMISSED WITH PREJUDICE.

**B.      Plaintiffs' Motion for Leave to File Third Amended Complaint**

6        On April 28, 2014, Plaintiffs submitted a Motion for Leave to File a TAC. Mot. to Amend

7    at 1. Plaintiffs seek to allege new claims for breach of express agreement, breach of implied

8    agreement, and fraud in the inducement, in addition to claims alleged in the SAC for wrongful

9    foreclosure; slander of title; Cal Civ. Code § 2923.5; violation of the FDCPA; violation of the

10   Rosenthal Act; violation of the UCL; and violation of RESPA. Mot. to Amend at 8.

11       Under the Federal Rules of Civil Procedure, a court has discretion to give leave to amend

12   pleadings "freely . . . when justice so requires." Fed. R. Civ. P. 15(a). In determining whether to

13   grant leave to amend a pleading, the court considers whether there has been "undue delay, bad

14   faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

15   amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

16   the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). A court

17   may deny leave to amend where amendment would be futile or if the claim is legally insufficient.

18   *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

19       Plaintiffs request leave to file a TAC to present allegedly new facts pertaining to the

20   increase in their monthly payments that will show Defendants' collection requests were unlawful.

21   Mot. to Amend at 9. Plaintiffs seek to present facts to show that Defendants wrongfully induced

22   Plaintiffs to "subordinate their rights" through alleged payment demands and threats of foreclosure

23   that were unlawful because of unduly ambiguous terms pertaining to their interest rate. *Id.*

24   Plaintiffs allege that because the payment demands were unlawful, the foreclosure threats were

25   wrongful, and the terms pertaining to Plaintiffs' interest rate were unduly ambiguous, they were

26   discharged of a duty to pay. *Id.*

27       Bank of America and Recontrust argue that Plaintiffs' Motion to Amend should be denied

28   because court records demonstrate that Plaintiffs have been aware of the "recently discovered"

United States District Court
Northern District of California

21

facts since at least May 8, 2012 when Plaintiffs included them in a complaint in a prior lawsuit against Defendants. BOA Opp'n at 3. MERS, Citibank, and SPS argue that Plaintiffs' TAC is premised entirely on the communications referenced in the SAC that Plaintiffs knew or should have known prior to filing their original complaint. MERS Opp'n at 5. Defendants argue that this is a dilatory tactic that results in an undue windfall for Plaintiffs, incurs further costs of litigation, and unduly prejudices Defendants who continue to lose out on payments to the loan. BOA Opp'n at 3–4; MERS Opp'n at 5. Defendants contend that Plaintiffs fail to provide a plausible reason why leave should be granted here other than to further delay proceedings. BOA Opp'n at 4. MERS Opp'n at 6.

The Court agrees with Defendants. Here, granting Plaintiffs leave to amend to allege the additional complaints of breach of express and implied agreement and fraud in the inducement is improper because Plaintiffs' "new" arguments rely upon facts that they knew or should have known for at least two years. Plaintiffs seek to assert arguments to support the allegation that Defendants illegally increased their monthly payment in May 2010. However, Plaintiffs made an argument contesting this monthly payment increase in their Previous Lawsuit against Defendants, thus, their new arguments will be premised on facts, agreements, and documents that they knew or should have known since May 8, 2012 when they filed the complaint in the Previous Lawsuit. *See* BOA RJN in Opp'n to Mot. to Amend. Ex. A. ¶¶ 25–26. Thus, requiring Defendants to respond to claims that should have been brought in earlier actions will result in undue delay. Further, granting leave to amend would result in undue prejudice through continued loss in payments owed to the loan as well as additional time and costs of litigation. *See Kalnoki v. First Am. LoanStar Tr. Servs. LLC*, No. 2:11-CV-02816-GEB, 2014 WL 1757216, at *8 (E.D. Cal. Apr. 29, 2014) (denying a motion to amend based on undue prejudice where proposed amendment would impose potentially high litigation costs that could have been avoided if Plaintiff had pursued its claims in the original complaint).

The Court further notes that Plaintiffs have already had three opportunities to state a claim. Plaintiffs filed their original complaint in this action in November 2012. *See* Dkt. No. 1. Before the Court considered Defendants' motions to dismiss that complaint, Plaintiffs amended by filing

United States District Court
Northern District of California

the FAC. *See* Dkt. No. 11. Following the Court's dismissal of the FAC, Plaintiffs attempted to cure the deficiencies in their pleadings with the SAC, which the Court dismisses with prejudice by this order. *See* Dkt. No. 58.

Plaintiffs do not present any reasons to allow them to raise new claims on preexisting facts when they have had multiple opportunities to do so. Accordingly, the Motion to Amend is DENIED.

## VI.     CONCLUSION

Plaintiffs have been given an opportunity to amend their complaint to state a viable claim but they have failed to do so, demonstrating that amendment would be futile. Accordingly, the Court GRANTS Defendants' Motions to Dismiss, DENIES Plaintiffs' Motion to Amend, and DISMISSES the SAC with prejudice.

**IT IS SO ORDERED.**

Dated: June 24, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge

United States District Court
Northern District of California

23